REGAN v WASHTENAW COUNTY BOARD OF COUNTY ROAD
COMMISSIONERS (ON REMAND)
ZELANKO v WASHTENAW COUNTY BOARD OF COUNTY ROAD
COMMISSIONERS (ON REMAND)

Docket Nos. 219761, 220532. Submitted March 31, 2003, at Lansing. Decided June 10, 2003, at 9:05 A.M. Leave to appeal sought.

Dona and Brian Regan brought an action in the Washtenaw Circuit Court against the Washtenaw County Board of County Road Commissioners and its employee, David Cavanaugh, after Dona Regan's vehicle collided with a broom tractor owned by the road commission and driven by Cavanaugh while the broom tractor swept gravel off the roadway. The trial court, Timothy P. Connors, J., granted summary disposition in favor of Cavanaugh, but denied summary disposition with regard to the road commission, concluding that there were questions of fact regarding whether the employee negligently operated the broom tractor, and whether the broom tractor was a "motor vehicle" for purposes of the motor-vehicle exception to governmental immunity. The defendant appealed by leave granted. Docket No. 219761.

Leonard Zelanko brought an action in the Washtenaw Circuit Court against the Washtenaw County Board of County Road Commissioners and its employee, Richard L. Shehan, after the plaintiff sustained injuries when a piece of tire tread was propelled through the windshield of his tractor-trailer rig after the tire tread was run over by a tractor mower owned by the road commission and driven by Shehan. The trial court, Donald E. Shelton, J., granted summary disposition in favor of Shehan, but denied summary disposition with regard to the road commission, concluding that a genuine issue of material fact existed regarding the road commission's negligence. The defendant appealed by leave granted, Docket No. 220532, and the appeal was consolidated with the appeal in Docket No. 219761. The Court of Appeals, MURPHY, P.J., and GRIFFIN, J., (WILDER, J., dissenting), affirmed the decisions of the trial court and remanded for further proceedings. *Regan v Washtenaw Co Bd of Co Rd Comm'rs*, 249 Mich App 153; 641 NW2d 285 (2002). The defendant sought leave to appeal in the Michigan Supreme Court. The Supreme Court, in lieu of granting leave to appeal, remanded

the case to the Court of Appeals for reconsideration in light of *Stanton v Battle Creek*, 466 Mich 611 (2002), and *Chandler v Muskegon Co*, 467 Mich 315 (2002), which cases addressed the motor-vehicle exception to governmental immunity. 468 Mich 851 (2003).

On remand, the Court of Appeals *held*:

1. One of the exceptions to the broad grant of governmental immunity afforded governmental agencies is the motor-vehicle exception, MCL 691.1405, which provides that governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any governmental officer, agent, or employee of a motor vehicle owned by the governmental agency. Pursuant to Supreme Court precedent, in order to maintain a suit within the ambit of the motor-vehicle exception, the government-owned vehicle must be a motor-driven conveyance similar to an automobile, truck, or bus, and the alleged injuries must be caused by activities that are directly associated with the operation of the motor vehicle as a motor vehicle.

2. In these cases, the trial court correctly denied the road commission's motions for summary disposition. The broom tractor and the tractor mower are "motor vehicles" for purposes of the motor-vehicle exception, because they are motor-driven conveyances that carry or transport operators over the road, or alongside the road, while the operators are performing governmental duties. Furthermore, the maintenance activities undertaken with the broom tractor and the tractor mower cannot be separated from the operation of the motor vehicles; in other words, the maintenance is directly associated with the driving of the vehicles. Thus, the vehicles were being operated as motor vehicles during the incidents that gave rise to the lawsuits, and the manner of operation was the alleged cause of the injuries.

Affirmed and remanded for further proceedings.

WILDER, J., dissenting, stated that he would reverse the decisions of the trial court in both cases because the broom tractor and the tractor mower cannot be considered "motor vehicles" for purposes of the motor-vehicle exception because the principal function of these vehicles are maintenance, and not the transportation of persons or property as is the case with automobiles, buses, and trucks. Moreover, even if the vehicles could be considered "motor vehicles" under MCL 691.1405, the plaintiffs' injuries did not result from the negligent operation of motor vehicles. Rather, the plaintiffs' injuries were allegedly caused by the negligent use of the maintenance equipment attached to the vehicles, and not from activities directly associated with the driving of the vehicles as motor vehicles.

Governmental Immunity — Motor-Vehicle Exception.

In order to maintain an action within the ambit of the motor-vehicle exception to governmental immunity, which exception provides that governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any governmental officer, agent, or employee of a motor vehicle owned by the governmental agency, the government-owned vehicle must be a motor-driven conveyance similar to an automobile, truck, or bus, and the alleged injury or damage must be caused by activities that are directly associated with the driving of the motor vehicle (MCL 691.1405).

*Blaske & Blaske, P.L.C.* (by *Thomas H. Blaske* and *E. Robert Blaske*), for Dona and Brian Regan.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Patrick Burkett* and *David F. Greco*), for Leonard Zelanko.

*Smith, Haughey, Rice & Roegge* (by *Jon D. Vander Ploeg*), and *Highland & Zanetti, P.C.* (by *R. Michael John*), for the Washtenaw County Board of County Road Commissioners.

ON REMAND

Before: Murphy, P.J., and Griffin and Wilder, JJ.

Murphy, P.J. This consolidated appeal is before us by order of the Michigan Supreme Court, 468 Mich 851 (2003). The Supreme Court, in lieu of granting leave to appeal, remanded the cases with instructions to reconsider our previous decision[1] in light of the rulings in *Stanton v Battle Creek,* 466 Mich 611; 647 NW2d 508 (2002), and *Chandler v Muskegon Co,* 467 Mich 315; 652 NW2d 224 (2002). On reconsideration,

---

[1] *Regan v Washtenaw Co Bd of Co Rd Comm'rs,* 249 Mich App 153; 641 NW2d 285 (2002).

we conclude that the broom tractor in the *Regan* case
and the tractor mower in the *Zelanko* case are "motor
vehicles" under MCL 691.1405,[2] and that in both cases
the motor vehicles were being operated as motor
vehicles when the alleged negligence occurred. More-
over, plaintiffs alleged that the operation of the motor
vehicles in a negligent manner directly caused injuries
for which they seek recovery, thereby properly plead-
ing in avoidance of governmental immunity under the
motor-vehicle exception, MCL 691.1405. We therefore,
once again, affirm the trial court's denial of defen-
dant's motions for summary disposition.[3]

Our previous opinion in this matter presented the
factual circumstances involved in both cases.

> In the *Regan* case, plaintiff Dona Regan was driving a
> [van][4] when she collided with a broom tractor owned by
> defendant road commission and operated by defendant
> David Cavanaugh, an employee of defendant. The Regans'
> complaint alleged that the tractor, which was the third vehi-
> cle in a five-vehicle convoy performing shoulder mainte-
> nance, straddled a fog line and extended several feet into
> her lane, which caused Regan to move to the left in an
> effort to pass the tractor, at which time a blinding dust
> cloud formed and Regan's vehicle and the county vehicle
> collided. The Regans further alleged that the operator was
> negligent in failing to pay proper attention to his course of
> travel and the movement of others on the highway, in fail-

---

[2] MCL 691.1405 provides that "[g]overnmental agencies shall be liable
for bodily injury and property damage resulting from the negligent opera-
tion by any officer, agent, or employee of the governmental agency, of a
motor vehicle of which the governmental agency is owner . . . ."

[3] For purposes of this opinion, we shall refer to the Washtenaw County
Board of County Road Commissioners and the Washtenaw County Road
Commission as "defendant" in the singular.

[4] In our original opinion we mistakenly stated that Regan was driving a
school bus at the time of the collision. *Regan, supra* at 155. Regan, a
school-bus driver, was actually driving a van at the time of the collision.

ing to keep a sharp and careful look-out, in failing to be observant of conditions, and in failing to keep his tractor constantly under control.

\*    \*    \*

In the Zelanko case, plaintiff Leonard Zelanko's tractor-trailer rig was struck in the windshield by a piece of tire tread propelled by a tractor mower operated by defendant Richard Lee Shehan, an employee of defendant, after Shehan ran over the tire tread while cutting grass along the side of the highway. The tire tread shattered the windshield and caused injuries to Zelanko. Zelanko alleged that the operator was negligent in failing to operate the tractor with due care and caution, in failing to maintain control of the tractor at all times, in failing to avoid driving over the tire tread, and in failing to keep a sharp lookout so as to avoid injuring Zelanko. [*Regan v Washtenaw Co Bd of Co Rd Comm'rs*, 249 Mich App 153, 155-156; 641 NW2d 285 (2002).]

Defendant previously argued to this Court that the trial court erred in denying its motions for summary disposition in the *Regan* and *Zelanko* cases. Defendant maintained that plaintiffs' complaints did not allege injuries arising out of the negligent operation of a motor vehicle, but rather out of negligent street-sweeping and lawn-mowing; therefore, MCL 691.1405 was inoperative. We rejected defendant's argument, noting that the allegations contained in the complaints alleged injuries caused by the negligent operation of the broom tractor and the tractor mower. *Regan, supra* at 155-156, 161 nn 4-6. We ruled that "[p]laintiffs alleged a direct and physical link between the operation of the county vehicles and plaintiffs' injuries," *id.* at 162, and we concluded:

[T]he operation of a motor vehicle by a governmental employee is typically in a setting where a governmental

function is being undertaken; the question here is not whether governmental immunity precludes liability for the exercise of the governmental function, but whether the allegations in plaintiffs' complaints allege injuries resulting from the negligent operation of a motor vehicle, thereby triggering the exception found in MCL 691.1405. Any other interpretation would render meaningless the Legislature's decision to enact MCL 691.1405, the statute that creates an exception to governmental immunity for negligent operation of a government-owned vehicle by an officer, agent, or employee of the governmental agency. We believe that the allegations in both complaints were sufficient to give rise to an exception to governmental immunity pursuant to MCL 691.1405. [*Id.* at 163.]

Against this backdrop, we now review the cases cited by our Supreme Court pursuant to which we are to reconsider our previous ruling. In *Stanton, supra* at 613, the plaintiff was injured when a forklift driven by a city employee rolled forward and struck the plaintiff at a site owned by the city. The sole question before the Supreme Court was "whether a forklift is a 'motor vehicle' within the ambit of the motor vehicle exception to governmental immunity, MCL 691.1405." *Id.* at 612. The Court held that the forklift was not a "motor vehicle" for purposes of the statute. *Id.* The *Stanton* Court, considering various dictionary definitions of the term "motor vehicle," held:

The definition of a "motor vehicle" as "an automobile, truck, bus, or similar motor-driven conveyance" is the narrower of the two common dictionary definitions. Therefore, we apply it to the present case. A forklift—which is a piece of industrial construction *equipment*—is not similar to an automobile, truck, or bus. Thus, the motor vehicle exception should not be construed to remove the broad veil of governmental immunity for the negligent operation of a

forklift. [*Id.* at 618, quoting *Random House Webster's College Dictionary* (2001) (emphasis in original).]

In *Chandler, supra* at 316, the injury forming the basis of the lawsuit occurred while the government's motor vehicle, a bus, was parked in a bus barn for the purpose of cleaning and was not being driven.[5] The Supreme Court focused on the word "operation" as used in MCL 691.1405, and again turned to a dictionary definition.[6] *Chandler, supra* at 319-320. The Court held that the motor-vehicle exception did not apply because the vehicle was not being "operated" when the injury occurred. *Id.* at 322. The Supreme Court ruled:

---

[5] The specific facts were as follows:

Smith drove one of the buses into the barn, turned off the engine, and started to exit through the open bus doors. As he was doing so, however, the bus doors closed on his neck, apparently because he had neglected to release the hydraulic air pressure valve.

The plaintiff had been waiting to clean the bus when he saw the incident. He attempted to pry open the doors and to hold them until someone came to reach through the bus window and release the air valve. Plaintiff injured his shoulder in the process and brought this action against the county. [*Chandler, supra* at 316.]

[6] We are unable to discern which dictionary definition, as between different dictionaries and the various definitions contained in a single text, was implicitly guiding our Legislature when the motor-vehicle exception was first adopted over fifty years ago. Considering the extensive changes in vehicles and transportation over the last half century, there is a likelihood that definitions have evolved. Although we typically attempt to determine the intent of the Legislature that actually adopted a particular act, *Blank v Dep't of Corrections*, 462 Mich 103, 148-149; 611 NW2d 530 (2000) (MARKMAN, J., concurring), the Michigan Supreme Court has clearly determined that the intent of the Legislature in the 1940s can be deciphered *solely* by reference to a particular portion of the definitions specifically contained in the 1997 and 2001 versions of *Random House Webster's College Dictionary. Chandler, supra* at 320; *Stanton, supra* at 617.

> Accordingly, aware that we are considering the dictionary definition of the word "operation," as well as construing a governmental immunity statute, which we must construe narrowly, we conclude that the "operation of a motor vehicle" encompasses activities that are directly associated with the driving of a motor vehicle. [*Id.* at 321.]

The Supreme Court held that operation of a motor vehicle means "that the motor vehicle is being operated *as* a motor vehicle." *Id.* at 320 (emphasis in original).

Taking into consideration the holdings in *Stanton* and *Chandler*, it can be stated that in order to maintain a suit within the motor-vehicle exception to governmental immunity, § 5, the vehicle must be a motor-driven conveyance similar to an automobile, truck, or bus, and the alleged injuries must be caused by activities that are directly associated with the driving of the motor vehicle. Statutory construction involves an issue of law that this Court reviews de novo. *In re RFF*, 242 Mich App 188, 198; 617 NW2d 745 (2000). With these principles in mind, we now turn to the cases before us.[7]

---

[7] Plaintiffs argue that the issue whether the broom tractor and tractor mower are "motor vehicles" was never raised below or on appeal by defendant, and thus is not properly preserved for review. We agree that the issue was not preserved and typically would not be considered. Nevertheless, we have been specifically directed by the Supreme Court to consider the ruling in *Stanton*. However, we do agree, in some instances, with a statement made by this Court in *Burns v Detroit (On Remand)*, 253 Mich App 608, 616; 660 NW2d 85 (2002), mod 468 Mich 881 (2003), in which, faced with a similar situation, the Court stated that "[w]hile we respect our Supreme Court's authority to raise [an] issue on remand sua sponte, we believe that invoking [the sua sponte] issue to benefit a party who failed to raise the issue would be entirely inappropriate." Because, in light of our ruling, defendant does not benefit from consideration of the issue, and because consideration of the issue would most likely be helpful for purposes of judicial economy in these cases that have been in the

With respect to whether the broom tractor and tractor mower are "motor vehicles" for purposes of § 5, we find that both vehicles fit the definition enunciated in *Stanton*. Both vehicles are clearly motor-driven conveyances, in that they are motorized and carry or transport operators over the road, or alongside the road, while the operators are performing governmental duties. We respectfully disagree with the dissent's test that the "principal function" of the vehicle must be to transport or carry passengers or property in order to be considered a "motor vehicle" under § 5. Similar language is not found anywhere in the *Stanton* decision or the statute, and the dissent's use of a "principal function" test suggests that a vehicle must be used chiefly for the purpose of transporting persons or property and cannot be used, in any significant manner, for maintenance or other purposes to qualify under § 5. Limiting the definition in this manner would exclude numerous governmental vehicles that traverse Michigan roadways, including snowplows, utility and construction vehicles, and emergency vehicles that are used in a maintenance, improvement, or service capacity.[8] This clearly was not the Legislature's intent in enacting MCL 691.1405. Surely, the Legislature did not intend to preclude liability for negligent actions associated with the opera-

---

appellate system for an extensive period, we shall substantively address the matter.

[8] It is possible, under the dissent's definition, to conclude that a fire engine is not a "motor vehicle" because it is more properly described as a piece of firefighting equipment rather than a vehicle principally used to transport or carry persons or property. We also note that the dissent references definitions found in the Michigan Vehicle Code, MCL 257.1 *et seq.*; however, the *Stanton* Court indicated that reference to the Vehicle Code was improper. *Stanton, supra* at 616. For this reason, we also reject Zelanko's reliance on definitions contained in the Vehicle Code.

tion of a governmental vehicle designed to be driven on or alongside roadways where the vehicle has maintenance and service capabilities.

Further, the broom tractor and tractor mower are comparable to an automobile, bus, or truck. The broom tractor was driven on the roadway, and was so intended to be operated.[9] In that sense, it is no different than any of the other vehicles specifically identified in *Stanton.* The tractor mower[10] was operated on the shoulder of the roadway and along the sides of the road, and was so intended to be operated.[11] The relationship between the tractor mower, used for mowing the grass along I-94, and the roadway itself is inseparable. As an automobile, bus, and truck are invariably connected to the roadways, so are the tractor mower and broom tractor in the cases at bar. There is no similar connection or relationship between the road and a forklift as was involved in *Stanton.* For purposes of § 5, a tractor owned and operated by a governmental agency being negligently driven on the roadway or alongside the roadway is no different than a utility truck owned and operated by the government being driven in a similar manner on or alongside the road. To create a distinction between the two, in analyzing the statute, would be illogical. A reading of the language used by the Legislature in MCL 691.1405 indicates a desire and purpose, in part,

---

[9] The broom tractor is a tractor mounted with a broom designed to brush loose dirt and gravel off the road. The operator testified at his deposition that the broom tractor is driven on the pavement, and on the day of the incident, his job was to "sweep the gravel off the road."

[10] The mower is attached to the side of the tractor.

[11] The operator of the tractor mower stated in his deposition that at the time of the incident giving rise to the lawsuit, he was "driving down the paved shoulder of the road."

to make roadways as safe for travel as possible by creating liability for governmental vehicles that are operated negligently and that create a danger for citizens as they use those same roadways.[12] That purpose would not be fulfilled by a ruling that the roadway-utilizing broom tractor and tractor mower, which allegedly caused injuries to persons using the roadways, are not motor vehicles. The vehicles in both cases are properly defined as "motor vehicles" under § 5.

With respect to whether the broom tractor and the tractor mower were being operated as motor vehicles resulting in injury under *Chandler*, there is absolutely no question that the motor vehicles were in operation and being driven when the incidents giving rise to the lawsuits occurred, and that the manner of operation was the alleged cause of the injuries. As required by *Chandler*, and pursuant to the complaints, the injuries in both cases were allegedly caused by activities directly associated with the driving of the motor vehicles. *Chandler* is clearly factually distinguishable because the bus in that case was not being driven but was in for cleaning at the time of the injury.

The dissent's conclusion, and defendant's argument, that the alleged injuries did not result from activities directly associated with the driving of motor vehicles but were instead allegedly caused by the negligent use of maintenance equipment, appears to exclude the possibility that so-called maintenance equipment may be driven and operated as vehicles on or along-

---

[12] This purpose is further evidenced by the highway exception to governmental immunity. MCL 691.1402. MCL 691.1402(1) provides that the appropriate governmental agency "shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel."

side the road while at the same time performing maintenance. We recognize that in some instances a distinction must be made between the operation of a motor vehicle and maintenance or construction services being performed by that same vehicle. For example, if a county cement-mixer, while being driven down the road, negligently strikes another vehicle causing injury, it can be said that an injury was caused by a motor vehicle as it was being operated as a motor vehicle; therefore, § 5 would be applicable. However, if the cement-mixer reached its destination at a work site and, while parked, began pouring cement in a negligent manner giving rise to an injury, it cannot be said that an injury was caused by a motor vehicle as it was being operated as a motor vehicle under the precedent in *Chandler*.

Here, the maintenance activities undertaken by the broom tractor and the tractor mower cannot be separated from the operation of the motor vehicles, i.e., the maintenance is directly associated with the driving of the vehicles. The broom tractor sweeps the pavement as it proceeds down the roadway. The tractor mower cuts grass as it proceeds on the shoulder of, or alongside, the roadway. In *Bakun v Sanilac Co Rd Comm*, 419 Mich 202, 203; 351 NW2d 810 (1984), our Supreme Court held that "county road commissions are liable for the negligent operation of their motor vehicles *even though* liability is incurred in connection with the construction, improvement, or maintenance of a state trunk line highway." (Emphasis added.) Since plaintiffs alleged that both vehicles caused injuries because of the manner in which they were driven or operated, it matters not that while the vehicles were driven, maintenance work was also

being accomplished.[13] The trial court did not err in denying defendant's motions for summary disposition.

Affirmed.

GRIFFIN, J., concurred.

WILDER, J. *(dissenting)*. Respectfully, I dissent. On reconsideration in light of *Stanton v Battle Creek*, 466 Mich 611; 647 NW2d 508 (2002), and *Chandler v Muskegon County*, 467 Mich 315; 652 NW2d 224 (2002), I would reverse the trial court's decision in each case.

### I. FACTS AND PROCEEDINGS

#### A. DOCKET NO. 219761

Plaintiff Dona Regan,[1] while driving her conversion van[2] on US-12 between Saline and Clinton, collided with defendant's[3] broom tractor[4] as it was driven by David Cavanaugh, defendant's employee. The broom tractor was the third vehicle in a five-vehicle convoy performing shoulder maintenance on US-12. On the

---

[13] We acknowledge that some of plaintiffs' allegations of negligent conduct are not directly associated with the driving of a motor vehicle, e.g., negligent entrustment, and those claims cannot survive. However, there are numerous allegations contained in both complaints that the motor vehicles were operated in a negligent manner, thus causing injuries, e.g., failure to pay proper attention to the course of travel, failure to keep the tractor under control, and failure to operate the tractor in a manner so as not to endanger motorists. The dissent does not address these allegations.

[1] Plaintiff Brian Regan's claim is for loss of consortium.

[2] Our prior opinion, *Regan v Washtenaw Co Bd of Co Rd Comm'rs*, 249 Mich App 153; 641 NW2d 285 (2002), stated that Regan was driving a school bus at the time of the collision. *Id.* at 155, 164. Our review of the record shows that although she had driven a school bus earlier in the day, she was driving her van at the time of the collision.

[3] Throughout this opinion, "defendant" refers to the Washtenaw County Road Commission.

[4] The record reflects that the broom tractor is a farm tractor with a front-mounted cylindrical broom.

day of the collision, the weather was hot and windy. Regan slowed as she approached the broom tractor rounding a curve, but as she attempted to pass the broom tractor, a blinding cloud of dust formed. Unable to see, Regan swerved to the right and applied her brakes, but nevertheless collided with the broom tractor. In her complaint, Regan alleged that Cavanaugh negligently operated the vehicle by failing to pay proper attention to his surroundings, failing to keep an appropriate lookout, failing to keep the tractor under control, and failing to operate the vehicle with concern for the safety of Regan and others. Regan also alleged that defendant was liable as the owner of the vehicle and had breached its duty to her by permitting "Cavanaugh to operate the motor vehicle owned by [defendant] to regravel on a blustery, windy day; and . . . failed to provide a water truck to hose down the dust and debris stirred up by the tractor, thus enabling both Plaintiff Dona Regan and [another driver] to be blinded and unable to safely proceed."

Defendant and Cavanaugh moved for summary disposition pursuant to MCR 2.116(C)(7) and (10). Although the trial court found that no reasonable juror could conclude that Cavanaugh was grossly negligent and granted his motion, the trial court denied defendant's motion. The trial court stated that because the allegations in Regan's complaint could lead to a conclusion that Cavanaugh was negligently operating the broom tractor and questions of fact existed concerning whether the alleged actions were within the scope of MCL 691.1405, the motor-vehicle exception to governmental immunity, summary disposition was inappropriate. The trial court subsequently

denied defendant's motion for reconsideration. This Court granted defendant's application for leave to appeal.

## B. DOCKET NO. 220532

Plaintiff Leonard Zelanko suffered injuries after a piece of rubber tire tread that was propelled by defendant's roadside tractor mower[5] shattered the windshield of the tractor-trailer rig he was driving on I-94 in Washtenaw County. Zelanko claimed that Richard Shehan, defendant's employee, ran over the tire tread with the mower while cutting the grass and that the mower threw the tire tread toward Zelanko's truck. In his complaint, Zelanko alleged that Shehan negligently failed to operate the tractor mower with due care, failed to maintain control, failed to avoid the piece of tire tread when he knew or should have known that hitting the tire tread would result in injury to Zelanko, and failed to keep a sharp lookout. Zelanko claimed that defendant was liable for negligent entrustment of the tractor and attached mower to Shehan.

Shehan and defendant moved for summary disposition pursuant to MCR 2.116(C)(7) and (C)(10). The trial court granted Shehan's motion, finding that Zelanko failed to allege or demonstrate that Shehan acted in a grossly negligent manner. The trial court denied defendant's motion apparently finding that a genuine issue of material fact existed concerning defendant's negligence, although the precise basis of the trial court's ruling is unclear from the record. This

---

[5] The record shows that the tractor mower is a farm tractor with a side-mounted mower.

Court granted defendant's application for leave to
appeal and consolidated this case with Docket No.
219761.

On appeal, defendant argued that plaintiffs did not
assert claims that resulted from the negligent opera-
tion of motor vehicles but asserted claims that
focused on the performance of governmental func-
tions, i.e., sweeping and mowing. On that basis,
defendant argued that plaintiffs' claims did not fall
within the ambit of the motor-vehicle exception to
governmental immunity, MCL 691.1405. *Regan v
Washtenaw Co Bd of Co Rd Comm'rs*, 249 Mich App
153, 158-162; 641 NW2d 285 (2002). In a divided opin-
ion, this Court held that in each case, the trial court
properly denied defendant's motion for summary dis-
position. *Id.* at 163. The majority found that plaintiffs
had sufficiently alleged that the negligent operation of
a motor vehicle caused their injuries and that the
basis of their claims was not that the "end result of
defendant's actions" caused their injuries. *Id.* at 159.

Additionally, the majority concluded that because
Regan had alleged injuries that resulted from impact
with defendant's vehicle, and Zelanko had alleged
injuries that resulted from impact with an object pro-
pelled by defendant's vehicle, plaintiffs' claims were
distinguishable from the plaintiffs' claims in *Robinson
v Detroit*, 462 Mich 439; 613 NW2d 307 (2000), and
the motor-vehicle exception was clearly applicable.
*Regan, supra* at 160-161, citing *Robinson, supra* at
445. Defendant sought leave to appeal this Court's
decision, and the Supreme Court's remand followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Poppen v Tovey*, 256 Mich App 351; 664 NW2d 269 (2003). In deciding whether governmental immunity entitles a defendant to summary disposition pursuant to MCR 2.116(C)(7), the court must review the affidavits, depositions, admissions, and other documentary evidence submitted by the parties. *Id.*; *Sewell v Southfield Pub Schools*, 456 Mich 670, 674; 576 NW2d 153 (1998). We accept as true the allegations in the plaintiff's complaint to the extent that affidavits or other documents submitted by the movant do not specifically contradict them. *Sewell, supra* at 674; *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001).

Summary disposition pursuant to MCR 2.116(C)(10) is appropriate when no genuine issues of material fact exist, except concerning the amount of damages, and the moving party is entitled to judgment as a matter of law. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 164; 645 NW2d 643 (2002). The court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in a light most favorable to the nonmoving party. *Id.*

## III. ANALYSIS

"[G]overnmental immunity is a characteristic of government." *Mack v Detroit*, 467 Mich 186, 198; 649 NW2d 47 (2002). Accordingly, to assert a viable claim against a governmental agency, a plaintiff must plead facts that establish an exception to governmental immunity. *Id.* The immunity enjoyed by governmental

agencies is broad, and the statutory exceptions to immunity are narrowly construed. *Stanton, supra* at 617. The exception to governmental immunity on which plaintiffs rely is the motor-vehicle exception, MCL 691.1405, which provides that

> [g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is the owner, as defined in [the Michigan Vehicle Code], as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948.

Although our prior opinion focused on whether plaintiffs had alleged injuries *resulting from* the operation of a motor vehicle, the Supreme Court, through its order of remand, has drawn our attention to two other requirements of the statute. For a plaintiff to pursue a claim under § 5, the vehicle in question must be a *motor vehicle*, and the plaintiff's claims must result from the negligent *operation* of the motor vehicle.

The majority first concludes that the broom tractor and tractor mower are "motor vehicles" for purposes of § 5.[6] I respectfully disagree. Whether a vehicle is a "motor vehicle" for purposes of MCL 691.1405 presents a question of statutory interpretation, *Stanton, supra* at 615, and is, therefore, a question of law

---

[6] As the majority points out, defendant did not preserve this issue, and we address it because the Supreme Court has ordered us to do so. Because the unpreserved question before us involves statutory interpretation, I cannot join the majority in its suggestion that invoking an issue sua sponte is *entirely* or always inappropriate, because, as the Supreme Court stated in *Mack, supra* at 209, "[t]he jurisprudence of Michigan cannot be, and is not, dependent upon whether individual parties accurately identify and elucidate controlling legal questions."

for the court. *Haliw v Sterling Hts*, 464 Mich 297, 302; 627 NW2d 581 (2001). In *Stanton*, the Court determined that a motor vehicle, for purposes of MCL 691.1405, is " 'an automobile, truck, bus, or similar motor-driven conveyance.' " *Stanton, supra* at 618, quoting *Random House Webster's College Dictionary* (2001). The *Stanton* Court concluded that a forklift, "a piece of industrial construction *equipment*," did not meet that definition. *Id.* (Emphasis in original.)

In the instant cases, each vehicle consisted of a farm tractor with a piece of functioning equipment attached to it. Because the vehicles cannot be classified as automobiles, buses, or trucks, under *Stanton*, the vehicles must qualify as "similar motor-driven conveyance[s]" in order to be classified as "motor vehicles" for purposes of § 5 Unlike the majority, I would conclude that the vehicles are not similar to automobiles, buses, or trucks and, therefore, are not "motor vehicles" within the meaning of § 5.

Automobiles and buses are designed principally for carrying passengers, including the driver. See *Random House Webster's College Dictionary* (2001) (defining an automobile as a "passenger vehicle designed for operation on ordinary roads . . . ."); and MCL 257.4b (defining a bus as "a motor vehicle designed for carrying 16 or more passengers. . . ."). A truck is designed primarily for transporting property. See MCL 257.75. A common purpose, therefore, of automobiles, buses, and trucks as motor-driven conveyances is that their principal function is to transport and carry either passengers or property.

In contrast, although the operators of the broom tractor and the tractor mower in question were transported or carried by these vehicles, it is undisputed

that the principal function of these vehicles is road maintenance. Thus, although the broom tractor and the tractor mower are motor-driven conveyances, they are not similar in their principal function to automobiles, buses, and trucks. On this basis, and consistent with the requirement that we narrowly construe the undefined term "motor vehicle," I would conclude that the motor-vehicle exception to governmental immunity does not apply here because the broom tractor and the tractor mower are not "similar motor-driven conveyances," and, therefore, are not motor vehicles within the meaning of § 5. *Stanton, supra* at 618.

I would also conclude that even if a "motor vehicle" was involved in each incident, plaintiffs' injuries, nevertheless, did not result from the negligent "operation" of a motor vehicle. In *Chandler*, the Supreme Court concluded that " 'operation of a motor vehicle' means that the motor vehicle is being operated *as* a motor vehicle." *Chandler, supra* at 320 (emphasis in original). "Operation," the Court said, has a narrower meaning than the term "use," which " 'may include a range of activity unrelated to actual driving.' " *Id.* at 320 n 7, quoting *Pacific Employers Ins Co v Mich Mut Ins Co*, 452 Mich 218, 226; 549 NW2d 872 (1996). " 'Operation of a motor vehicle,' " however, "encompasses activities that are directly associated with the driving of a motor vehicle." *Id.* at 321.

In the instant cases, I would find that plaintiffs' injuries did not result from operation of the tractors as motor vehicles. Rather than allegedly resulting from activities directly associated with the driving of a motor vehicle as a motor vehicle, plaintiffs' injuries were allegedly caused by the negligent use of mainte-

nance equipment. Even assuming that the tractors are motor vehicles, the use of the broom and the mower was not incident to driving the tractors as motor vehicles. See *Chandler, supra* at 322. In this regard, the broom tractor and the tractor mower are different in operation from, for example, a snowplow that, in design, is a truck with salt in the truck bed and a blade or blades attached to the front to push the snow. Although the snowplow engages in a maintenance function as it moves on the roadway, its operation on the roadway is directly related to its operation as a truck, or in other words, as a motor vehicle.

On the other hand, plaintiff Regan alleged that defendant was negligent by permitting its employee to use the broom on "a blustery, windy day" without providing "a water truck to hose down the dust and debris stirred up by the tractor . . . ." Plaintiff Zelanko alleged that defendant negligently entrusted the operation of the tractor mower to its employee because the employee "was incompetent or unqualified to operate the tractor and attached lawnmower." Defendant's employee was allegedly incompetent and unqualified to operate the tractor mower because he "failed to avoid driving [the lawnmower] over [a] piece of rubber and/or other debris" in the grass that he was mowing.

These challenged functions are not directly related to the operation of the vehicles as motor vehicles. Rather, the challenged functions relate to the operation of the maintenance attachments to the vehicles. In other words, if the maintenance functions had been performed differently, by using a water truck to keep dust down in the case of the broom tractor, or by clearing debris from the mowing area before mow-

ing in the case of the tractor mower, the claimed negligence might have been avoided. Neither the alleged negligent operation of the vehicles nor these potential corrective measures have anything at all to do with the operation of the vehicles at issue as motor vehicles.[7] I conclude, therefore, that in neither case did the plaintiff's injury arise out of the operation of a motor vehicle as a motor vehicle, and that governmental immunity is not avoided under the motor-vehicle exception found in § 5.

For the above reasons, and in light of the Supreme Court's holdings in *Stanton, supra,* and *Chandler, supra,* I would hold that plaintiffs' claims do not satisfy the requirements of the motor-vehicle exception to governmental immunity, and that the trial court erred when it denied defendant's motions for summary disposition.

---

[7] This conclusion is analogous to the determination by our Supreme Court that in order to obtain personal-injury-protection benefits pursuant to MCL 500.3105, the use of a motor vehicle "as a motor vehicle" requires that the injury be closely related to the transportational function of the motor vehicle. *McKenzie v Auto Club Ins Ass'n,* 458 Mich 214, 220, 225-226; 580 NW2d 424 (1998).