*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUDREY WEST and RANDY WEST,

      Plaintiffs-Appellees,

v

DEPARTMENT OF NATURAL RESOURCES,
ANDREW ALBERT, and STEVE BUTZIN,

      Defendants-Appellants.

FOR PUBLICATION
August 6, 2020

No. 348452
Court of Claims
LC No. 18-000236-MZ

Before: RIORDAN, P.J., and SHAPIRO, and RONAYNE KRAUSE, JJ.

RIORDAN, P.J. (*dissenting*).

I respectfully dissent. The trial court erred when it considered only the actual use of the snowmobiles at issue when determining whether the motor vehicle exception to the Governmental Tort Liability Act (GTLA), MCL 691.1405, bars plaintiffs' lawsuit. I would reverse and remand for the trial court to consider the additional relevant factors which were omitted from its analysis.

The governmental tort liability act, MCL 691.1401 *et seq*., does not define "motor vehicle" but our Supreme Court has interpreted the common, ordinary meaning to be "an automobile, truck, bus, or similar motor-driven conveyance." *Stanton v City of Battle Creek*, 466 Mich 611, 617; 647 NW2d 508 (2002) (holding that a forklift is not a motor vehicle because it is a piece of industrial construction equipment). Subsequently, this Court has struggled to makes heads or tails of what the term "similar motor-driven conveyance" includes,[1] and has focused generally on some

---

[1] The Supreme Court has not elaborated on the definition, but has found in one case that the exception did not apply when a plaintiff was injured by a bus parked in a maintenance facility because the vehicle was not being "operated" when the injury occurred. *Chandler v Muskegon Co*, 467 Mich 315, 322; 652 NW2d 224 (2002). See also *Overall v Howard*, 480 Mich 896; 738 NW2d 760 (2007) (an order reversing for the reasons stated in the dissent) (*Overall II*); *Overall v Howard*, unpublished opinion per curiam of the Court of Appeals, decided April 26, 2007 (Docket No. 274588) (*Overall I*) (JANSEN, J., dissenting) (concluding that a golf cart driven near a

combination of the following three factors: physical attributes,[2] intended use or purpose,[3] and actual use of the conveyance at the time of injury.[4]

Here, the trial court considered only the actual use of the snowmobiles at the time of injury. Although the "primary function" of a vehicle is not the controlling factor,[5] the intended use or purpose and physical characteristics are relevant factors[6] which the trial court failed to consider in this case.

The majority considers those relevant factors but reaches a questionable conclusion. As defendant argues on appeal, there are numerous characteristics that make the snowmobiles in this instance dissimilar from a car, truck, or bus. For example, from the record we know that snowmobiles have skis and a treaded track for propulsion instead of wheels like cars, trucks, and buses. Further, snowmobiles lack the airbags, restraints, and complex safety mechanisms that are required by law in cars, trucks, and buses to prevent and reduce injuries in the event of a collision.[7]

---

concession stand at a high school football game was not a motor vehicle because, in terms of its design and physical attributes, it more closely resembled a forklift than the conveyances in other cases).

[2] *Wesche v Mecosta Co Rd Comm*, 267 Mich App 274, 278; 705 NW2d 136 (2005), aff'd 480 Mich 75 (2008) (holding that a Gradall, a wheeled, hydraulic excavator, generally resembles a truck and moves like a truck and qualifies as a motor vehicle; additionally noting that the Gradall was being driven like a truck on a public roadway when the injury occurred); *Overall I*, at *3 (JANSEN, J., dissenting) (focusing on whether a golf cart was designed for operation on or alongside a highway).

[3] *Regan v Washtenaw Co Bd of Co Rd Comm'rs (On Remand)*, 257 Mich App 39, 47–51; 667 NW2d 57 (2003) (holding that a broom tractor and a tractor mower were motor vehicles because both are "invariably connected to the roadways").

[4] See *Wesche*, 267 Mich App at 278 (noting that the Gradall was being driven like a truck on a public roadway when the injury occurred); *Yoches v City of Dearborn*, 320 Mich App 461, 475-476; 904 NW2d 887 (2017) (holding that a tractor and hay wagon used for a hayride was a motor vehicle because it was carrying passengers on a roadway when the injury occurred).

[5] *Wesche*, 267 Mich App at 277; *Regan (On Remand)*, 257 Mich App at 48.

[6] See *Overall I*, at *3 (JANSEN, J., dissenting) (considering a golf cart's physical attributes and intended use).

[7] The majority notes that certain complex safety systems were not mandatory or available in 1964 when MCL 691.1405 was enacted. However, our Supreme Court in *Stanton*, 466 Mich at 618, interpreted the relevant term "motor vehicle" by consulting *Random House Webster's College Dictionary* (2001), which it preferred over the American Heritage Dictionary (2d College ed) (published in 1982). Thus, the Supreme Court in *Stanton* did not interpret the term according to its 1964 definition, nor has any subsequent binding decision expressly or impliedly held that a "similar motor-driven conveyance" must be similar to the cars, trucks, and buses of 1964. Therefore, I disagree with the majority opinion's implication that any comparison should be

Unlike cars, buses, and trucks, snowmobiles also generally cannot traverse ground that is not covered by snow or ice.

Additionally, the majority takes judicial notice of defendants' map indicating that the area where the collision occurred is a designated snowmobile trail. The majority further takes judicial notice that the county considers the trail to be a "scenic drive," and then concludes that the trail was a public roadway at the time of the accident because there is no evidence that the trail was limited only to use by snowmobiles. However, the majority ignores the record evidence demonstrating that at the time of the accident, the collision occurred on a groomed snowmobile trail which was not open to cars, trucks, or buses, or even capable of being traversed by those vehicles. In doing so, the majority expands the record on appeal to create a factual dispute, and then weighs the evidence to resolve that dispute. Although we review de novo whether plaintiffs' claim is barred under MCR 2.116(C)(7), summary disposition is only appropriate where there is no factual dispute. *Moraccini v City of Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012).

Therefore, I would remand this matter to the trial court to consider the factors listed above, and by extension the relevant facts, it omitted from its analysis.

/s/ Michael J. Riordan

---

limited in such a fashion—particularly when it is questionable how closely the cars, trucks, and buses of today, or of the near future, resemble their 1964 ancestors. Moreover, even if the majority opinion is correct on this point, I cannot conclude that the snowmobiles in this case are sufficiently similar to the cars, buses, and trucks of 1964 to meet that standard.

The majority also relies on *People v Rogers*, 438 Mich 602; 475 NW2d 717 (1991), for the proposition that our Supreme Court has implicitly deemed snowmobiles to be motor vehicles. That case required the Court to consider whether the defendant could be prosecuted under two different sections of the Motor Vehicle Code for operating a snowmobile on a public highway while intoxicated. Notably, the Motor Vehicle Code defines "vehicle" as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices exclusively moved by human power or used exclusively upon stationary rails or tracks and excepting a mobile home...." *Id.* at 605 citing MCL 257.79. That definition is much broader than the definition of "motor vehicle" set forth in *Stanton*. Moreover, there is no indication from the Supreme Court in *Stanton* or *Rogers* that the definition of "vehicle" in the Motor Vehicle Code is properly applied in cases involving the GTLA.