*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALEXA PELTIER and DAVID PAUL SPEHAR,

Plaintiffs-Appellees,

v

SUBURBAN MOBILITY AUTHORITY FOR
REGIONAL TRANSPORTATION, also known as
SMART, and VERNON COLISTS WILLIAMS,

Defendants-Appellants.

UNPUBLISHED
December 17, 2024
10:50 AM

No. 365895
Wayne Circuit Court
LC No. 20-006503-NI

Before: YOUNG, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

This case is a third-party automobile negligence action filed by plaintiffs, Alexa Peltier and David Paul Spehar. Defendants, Suburban Mobility Authority for Regional Transportation, also known as SMART, and Vernon Williams,[1] appeal as of right from the trial court order denying their motions for summary disposition. Although defendants raise several arguments, their primary contention is that they are immune from tort liability under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.* For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

This case arises from a SMART bus accident that took place on April 26, 2020, in the city of Detroit, in the area of Grand Circus Park. The accident took place during the afternoon hours in bright and clear conditions. Peltier and Spehar, who were engaged to be married, were walking eastbound across Woodward Avenue within a marked crosswalk. The crosswalk signal indicated that it was permissible for pedestrians to cross at that time. Williams was driving the SMART bus

---

[1] For ease of reference, we will refer to SMART and Williams collectively as defendants and Alexa Peltier and Spehar collectively as plaintiffs.

eastbound on Park Avenue, turning left to travel northbound on Woodward Avenue, when the bus struck Peltier and caused Spehar to fall. Both sustained injuries as a result of the crash.

Plaintiffs filed a complaint against SMART and Williams, alleging negligence or gross negligence against Williams, and owner's liability, negligent entrustment, and vicarious liability for Williams' gross negligence against SMART. Plaintiffs pled in avoidance of governmental immunity by alleging facts that would justify the application of exceptions to governmental immunity against Williams under MCL 691.1407 (gross-negligence exception) and against SMART under MCL 691.1405 (motor-vehicle exception). Following discovery, defendants moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). After oral argument, the trial court denied the motions. This appeal follows.

## II. GOVERNMENTAL IMMUNITY

### A. STANDARD OF REVIEW

Defendants argue that the trial court erred by denying their motions for summary disposition. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). "MCR 2.116(C)(7) permits summary disposition where the claim is barred by immunity." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing such a motion, the trial court must accept "[t]he contents of the complaint . . . as true unless contradicted by documentation submitted by the movant." *Id*. at 119. The applicability of governmental immunity, as well as the statutory exceptions to governmental immunity present a question of law that we review de novo. *Wood v Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018). In turn, summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). The evidence submitted by the parties must be viewed "in the light most favorable to the party opposing the motion." *Id*. Summary disposition "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material facts exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

#### 1. WILLIAMS

Defendants first contends that the trial court erred in concluding that genuine issues of material fact existed regarding whether Williams was grossly negligent in operating the SMART bus. MCL 691.1407, which addresses the immunity of governmental employees, states in relevant part:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or

member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct *does not amount to gross negligence that is the proximate cause of the injury or damage*. [Emphasis added.]

" 'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). For conduct to rise to the level of gross negligence, a reasonable person must be able to conclude that the governmental employee "exhibited a substantial disregard for the safety" of others, and that the employee did not exercise the high degree of care and professionalism required in discharging his or her professional role. *Tarlea v Crabtree*, 263 Mich App 80, 89; 687 NW2d 333 (2004).

Both Spehar and Peltier testified that as they crossed Woodward Avenue, they complied with the pedestrian traffic signal, paid attention to their surroundings, looked both ways, and did not see the SMART bus. Peltier was not aware of the presence of the SMART bus until it slammed into her midsection. However, two witnesses testified that they had observed Williams driving erratically and at a high rate of speed in the moments leading up to the collision. Additionally, it is undisputed that Williams had driven through a stop sign at the previous intersection without stopping.

During his deposition, Williams was adamant that he did not see Peltier before he hit her with the bus. However, the SMART bus that Williams was driving was equipped with multiple surveillance videos, and the video footage contradicts Williams' deposition testimony. In the video, Williams drives the SMART bus on its route toward the intersection of Park Avenue and Woodward Avenue. As Williams approaches the intersection, the SMART bus appears to reach a complete stop before it begins to accelerate again and turns left into the intersection, where Peltier and Spehar were clearly visible as they cross the intersection in the marked crosswalk. Peltier and Spehar are knocked over. Even after reviewing the SMART bus surveillance video from multiple angles, it is unclear whether the bus came into physical contact with Spehar. Peltier, however, was clearly hit and run over by the bus. Afterward, Williams can be heard saying, "Oh man," and another individual can be heard shouting something that sounded like "Oh man, what did you do?" Williams responds by saying something to the effect of, "Man, I didn't see them coming out on the street." Peltier can be heard screaming in the background. And another voice yells, "Hey, watch where you are going dude!"

Later, Williams made a phone call while standing in the SMART bus. During the call, Williams states that he was turning the SMART bus left onto Woodward Avenue off of Park Avenue. He says that he "seen them at the curb and when I seen 'em it didn't look like they were moving across the street and I guess as I was turning they came across the street and I heard

something hit the bus and the guy said I hit her leg." Williams recounts that when he looked at the mirror, he saw that he had hit Peltier's leg and that she fell down.

On the basis of this evidence, a reasonable juror could conclude that Williams was grossly negligent as he exhibited a substantial disregard for the safety and wellbeing of both Peltier and Spehar as they crossed the street in front of the SMART bus in the crosswalk, and that in turning the bus with pedestrians exercising their right of way in the crosswalk, Williams also demonstrated a substantial lack of concern for whether an injury would result to the pedestrians. See *Tarlea*, 263 Mich App at 90. Similarly, the evidence reflects a willful disregard on the part of Williams to take precautions or measures to attend to safety, as well as a singular disregard for the resulting substantial risks. *Id*.

Even setting aside the SMART bus surveillance video, which itself is inculpatory of Williams's gross negligence, genuine issues of material fact also exist with regard to the testimony of defendants' experts and plaintiffs' experts, all of whom disagreed regarding what exactly Williams could or did see as he turned the bus left onto Woodward Avenue. The defense experts took the position that Williams's vision was occluded and obstructed by the side view mirror on the side of the SMART bus, so he could not see Peltier and Spehar. The defense experts also determined that Williams acted in a reasonable and attentive manner in operating the SMART bus. In contrast, plaintiffs' experts opined that Williams had a responsibility to move his body and head in a manner that would have allowed him to see around any potential obstructions and obtain a clear view of the pedestrians to avoid a potential accident, and that in the clear and sunny conditions of April 26, 2020, Williams should have seen Peltier and Spehar in the crosswalk. Given this divergence in the expert evidence, the trial court did not err in concluding that genuine issues of material fact remained for trial with respect to whether Williams's operation of the SMART bus amounted to gross negligence.

Defendants next argue that summary disposition was warranted as to Spehar's claim because Williams' alleged gross negligence was not "the proximate cause" of Spehar's injuries. Under MCL 691.1407(2)(c), the employee's gross negligence is required to be "the proximate cause" of the plaintiff's injuries, which means "the one most immediate, efficient, and direct cause preceding an injury, *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000). The thrust of defendants' contention is that genuine issues of material fact did not exist on this issue because the evidence did not establish that the SMART bus struck Spehar and therefore Williams's conduct was not the one most immediate, efficient, and direct cause of Spehar's alleged injury.

A review of Spehar's deposition testimony as a whole confirms that he believed that he was struck by a SMART bus while crossing the street in a crosswalk on a clear and sunny day; however, he also expressed some uncertainty regarding the issue. His uncertainty is not unusual given the chaotic event that he and Peltier experienced. Having watched the surveillance video, and considering the positioning of Peltier and Spehar, it is not possible to say with certainty whether the SMART bus struck Spehar, and therefore the SMART bus surveillance video is of limited value. However, in light of Spehar's testimony that he felt a strong force to his right side, his refusal to agree with defendants' lawyer that he was not hit by the SMART bus, and his repeated statements that he did feel the SMART bus hit him, genuine issues of material fact remained for the trier of fact concerning whether the grossly negligent conduct of Williams was

the one most immediate, efficient, and direct cause preceding Spehar's injury. *Robinson*, 462 Mich at 459.

## 2. SMART

Defendants argue that SMART was entitled to summary disposition as to Spehar's claims because his injuries do not meet the tort threshold set forth in MCL 500.3135(1). Plaintiffs contend that this Court lacks jurisdiction to consider this issue. We agree. Under MCR 7.203, an appeal of right on an order denying a grant of summary disposition based upon governmental immunity is limited to the portion of the order addressing governmental immunity. On appeal, defendants concede that this Court lacks jurisdiction over this aspect of their appeal, but urge this Court to nevertheless address the issue in the interest of judicial economy. We decline to do so.

Defendants next argue that SMART is entitled to summary disposition as to Spehar's claims because he did not incur a bodily injury under the motor-vehicle exception, MCL 691.1405, which provides:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948.

The phrase "liable for bodily injury" means that the defendant governmental agency is "legally responsible for damages flowing from a *physical or corporeal* injury to the body." *Hannay v Dep't of Transp*, 497 Mich 45, 50-51; 860 NW2d 67 (2014).

Spehar testified in his deposition that the only physical trauma he incurred to his body was a scrape to his elbow for which he did not seek medical attention. The additional claims for which Spehar sought recovery following the accident were for his mental and emotional distress, which was caused by his witnessing the physical trauma that Peltier suffered. Spehar was diagnosed with a combination of post-traumatic stress disorder (PTSD) diagnosis, severe anxiety, and depression. He was off work for a few months after the crash.

In response to defendants' motion for summary disposition, plaintiffs presented an affidavit from a doctor who, after reviewing Spehar's records, averred that Spehar's PTSD *could be* indicative of a serious neurological injury. Yet, a review of Spehar's records does not yield any indication regarding how the diagnosis of PTSD has injured Spehar's brain. Also missing from the record are any diagnostic or medical tests that would support plaintiffs' assertion that Spehar's brain has been *physically* injured as a result of this accident. Plaintiffs also included articles addressing how PTSD and trauma impact the brain, but these articles do not address Spehar's circumstances specifically or how he suffered a bodily injury. Accordingly, the record does not contain evidence yielding genuine issues of material fact regarding whether Spehar incurred a "bodily injury" under MCL 691.1405. Therefore, the trial court erred by denying SMART's motion for summary disposition under MCR 2.116(C)(10) on the basis of governmental immunity with respect to Spehar.

Defendants next maintain that summary disposition for SMART was warranted as to both Spehar and Peltier's claims because SMART was entitled to immunity under MCL 691.1407(1) and because the motor-vehicle exception set forth in MCL 691.1405 was not applicable.[2] Specifically, SMART contends that because genuine issues of material fact did not exist regarding whether Williams was negligent (much less grossly negligent) in his operation of the SMART bus, it is not liable under MCL 619.1405, nor is it vicariously liable for Williams's conduct under MCL 1407(1). SMART, as a governmental entity, is immune from tort liability when engaged in the exercise or discharge of a governmental function. MCL 691.1407. Governmental agencies can only be held liable under the GTLA if a case falls within one of the statutory exceptions to governmental immunity. *Moraccini v Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Here, as noted above, there is a genuine issue of material fact with regard to whether Williams's operation of the SMART bus was grossly negligent. For the same reasons, there is a genuine issue of material facts as to whether his conduct only rose to the level of ordinary negligence. Summary disposition, therefore, was not warranted as to plaintiffs' claim that SMART was vicariously liable for Williams' gross negligence under MCL 691.1407. Further, summary disposition was not warranted as to Peltier's claim that SMART was liable for Williams' negligent operation of the SMART bus under MCL 691.1405.

SMART next asserts that summary disposition was warranted as to plaintiffs' claims for owner's liability under MCL 257.401 and negligent entrustment. In *Regan v Washtenaw Co Bd of Co Rd Comm (On Remand)*, 257 Mich App 39, 51 n 13; 667 NW2d 57 (2003), this Court held that a claim for negligent entrustment does not fit within a statutory exception to governmental immunity. Accordingly, the trial court erred by denying summary disposition as to plaintiffs' negligent entrustment claim. Likewise, in *Alex*, 460 Mich at 17, our Supreme Court recognized that when a person is injured by a government employee driving a government-owned vehicle, they are required to establish gross negligence to recover damages from the driver, but to recover damages from the owner of the vehicle, the governmental agency, they need only establish ordinary negligence. The *Alex* Court explained:

> [T]he Legislature has formulated a clear statutory framework for determining the extent of governmental immunity in a case arising from a motor vehicle accident. [MCL 691.1407(1) and MCL 691.1405] outline the immunity of government agencies and of individuals, as well as the extent of liability for harm caused by negligent operation of government-owned vehicles. . . . It is not for the courts to

---

[2] Plaintiffs contend that this Court lacks jurisdiction to consider this issue. We disagree. While SMART, as a governmental body, would generally be immune from tort liability under MCL 691.1407(1), such immunity is subject to the various exceptions to governmental immunity, one of which is the motor vehicle exception. For the exception to apply, it is necessary for the Court to determine whether (1) Williams's operation of the SMART bus was negligent and (2) Spehar presented evidence sufficient to withstand summary disposition under MCR 2.116(C)(10) with respect to defendants' allegation that he did not incur a "bodily injury" as contemplated by MCL 691.1405. Both questions are germane to the issue whether SMART can be held liable in tort, therefore any argument that these legal inquiries fall outside of this Court's jurisdiction is not persuasive.

-6-

add or subtract from the balance struck by citizens of this state, as expressed by their elected representatives in the Legislature.

Accordingly, under *Alex*, SMART's potential liability should be evaluated in light of the immunity provisions of the GTLA, rather than the owner's liability statute. The trial court, therefore, erred by denying SMART's motion for summary disposition of plaintiffs' owners' liability claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. MCR 7.219(A).

/s/ Adrienne N. Young
/s/ Michael J. Kelly
/s/ Kathleen A. Feeney