SEWELL v SOUTHFIELD PUBLIC SCHOOLS

Docket No. 106327. Argued January 6, 1998 (Calendar No. 1). Decided
     April 1, 1998.
     Douglas B. Sewell, for himself, and as next friend of Devin D. Sewell,
          a minor, brought an action in the Oakland Circuit Court against
          Southfield Public Schools and others, seeking damages for injuries
          sustained by Devin in a diving accident in the Southfield High
          School swimming pool. The court, Steven N. Andrews, J., granted
          summary disposition for the district, holding that the facts alleged
          did not support a finding that the pool was defective or unsafe for
          its intended and foreseeable use. The Court of Appeals, MACKENZIE,
          P.J., and M. W. LABEAU, J. (WHITE, J., concurring in part and dissent-
          ing in part), affirmed in an unpublished opinion per curiam, holding
          that the injuries were related to issues of safety in a public building
          and allegations of improper supervision, rather than to a defect or
          danger in the pool itself (Docket No. 169851). The plaintiffs appeal.
          In a unanimous opinion by Justice CAVANAGH, the Supreme Court
     held:
          Summary disposition was improperly granted. The plaintiffs
     alleged an actual defect in the swimming pool for purposes of the
     public buildings exception to governmental immunity.
          1. Generally, a governmental entity is immune from tort liability
     for actions that accrue while it is performing a governmental func-
     tion. The immunity is subject to a limited number of narrowly
     drawn exceptions, however. To come within the public building
     exception to governmental immunity, a plaintiff must establish that
     a governmental agency is involved, the public building in question
     is open for use by the public, a dangerous or defective condition of
     the public building itself exists, the governmental agency had
     actual or constructive knowledge of the alleged defect, and the
     governmental agency failed to remedy the alleged defective condi-
     tion after a reasonable period. The public building exception
     applies only where the physical condition of the building itself
     causes the injury; the government's duty is to maintain safe public
     buildings, not necessarily safety in public buildings. A building may
     be dangerous or defective because of improper design, faulty con-
     struction, or the absence of safety devices. However, whether a

building is dangerous or defective must be determined in light of the uses or activities for which it is assigned. Where the essence of a plaintiff's claim is negligent supervision, the plaintiff cannot properly allege a building defect merely because a superior building design would have facilitated better supervision. But where the essence of a claim is a defect in the building itself, summary disposition may not be granted simply by claiming that proper supervision would have averted the injury.

2. In this case, it is clear that diving was a contemplated use of this pool. It was not a misuse of the pool to enter into it by diving. The defendant's duty was to construct, repair and maintain the swimming pool in such a way that it was safe for both swimming and diving, and the defendant can be held liable for any defective or dangerous condition that injured a person who either was swimming or diving. Because this is an appeal of a motion for summary disposition under MCR 2.116(C)(7), a reviewing court must accept all the nonmoving party's uncontested allegations and evidence as true. The Court of Appeals failed to so construe the plaintiffs' evidence. The purpose of summary disposition is not to evaluate the weight of a plaintiff's proofs. Rather, the reviewing court's task is to determine whether the plaintiff has stated a valid claim at law. When the plaintiffs' proofs in this case are given the proper deference, they allege a defect within the pool.

Reversed and remanded.

*Tucker & Hughes, P.C.* (by *Juanita Gavin Hughes* and *Clarence B. Tucker*), for plaintiffs-appellants.

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani*), for defendant-appellee.

CAVANAGH, J. We granted leave in this case to determine whether the defendant, Southfield Public Schools, was properly granted summary disposition on the basis of the immunity extended to governmental entities in MCL 691.1407(1); MSA 3.996(107)(1). We find that plaintiffs have alleged an actual danger or defect in the Southfield High School swimming pool so as to fall within the public building exception to governmental immunity, MCL 691.1406;   MSA

3.996(106). Summary disposition in favor of the defendant was improperly granted.

I. STATEMENT OF FACTS AND PROCEEDINGS

Plaintiffs' claim is based on injuries Devin Sewell sustained during his ninth grade swimming class at Southfield High School. On November 17, 1992, Sewell and several of his classmates were instructed to swim five laps in the pool. Three students dove into the pool near the area where the pool was marked five-feet deep. Plaintiff followed suit and struck his head on the bottom of the pool. Sewell climbed out of the pool and informed the student assistant of what had happened. The student assistant told the instructor of the incident. Sewell was told to change into his clothes and lie down on the couch in the office. Later, when the head of the physical education department told Sewell to get up and call his parents, plaintiff discovered that he could not move. Ultimately, it was determined that Sewell had fractured his spine and had to undergo corrective surgery.

Plaintiffs brought the instant action against Southfield Public Schools, the swimming instructor, the instructor's student assistant, and the head of the physical education department.[1] With respect to the

---

[1] The claim of gross negligence against the student assistant and the head of the physical education department was dismissed on summary judgment. The claim involving the instructor's alleged gross negligence was originally dismissed by the trial court, but the Court of Appeals reinstated the claim and remanded it to the trial court. The claim of intentional infliction of emotional distress against both the instructor and his student assistant was also dismissed on summary disposition. Plaintiffs only sought leave to appeal with regard to the claim against the school, and the instructor did not appeal the reinstatement of the gross negligence claim against him. Therefore, the only claim before this Court is the one against the school. Use of the word "defendant" in this opinion refers only to the Southfield Public Schools.

school, plaintiffs alleged that the school had maintained a dangerous and defective building by having a pool with an uneven floor by improperly marking the depth of the pool, by not posting warning signs against diving in the shallow end, and by allowing students to dive in the shallow end.

In a written opinion and order, the trial court granted defendant's motion for summary disposition. It held that

> [t]he complaint does not allege any facts to support a finding that the pool itself was defective or unsafe for its intended and foreseeable use. The crux of the complaint is that no one kept an eye on students to stop them from diving into the shallow end of the pool or warned them against such activity. Pursuant to [*Hickey v Zezulka (On Resubmission)*, 439 Mich 408, 422; 478 NW2d 106 (1992)], the Court finds that such claims amount to safety in the building, not a defect in the building and defendant school system is thus entitled to immunity.

Plaintiffs appealed, and a majority of the Court of Appeals echoed the sentiment of the trial court. It found that the dive and subsequent injuries related "to safety in a public building and allegations of improper supervision," rather than a defect or danger in the pool itself. Unpublished opinion per curiam, issued March 22, 1996 (Docket No. 169851), slip op at 2. The dissent argued that plaintiffs had alleged a building defect, rather than a failure of supervision. We granted leave to appeal. 454 Mich 909 (1997).

II. CASE LAW

A. STANDARD OF REVIEW

We review a motion for summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law. *Groncki v Detroit Edison Co*, 453 Mich 644, 649; 557 NW2d 289 (1996). Defendant's motion is predicated on MCR 2.116(C)(7), which provides for summary disposition when a claim is barred by an immunity granted by law. In reviewing such a motion, a court must consider all documentary evidence filed or submitted by the parties. MCR 2.116(G)(5); *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). However, "the contents of the complaint must be accepted as true unless specifically contradicted by the affidavits or other appropriate documentation submitted by the movant." *Id.* at 434, n 6.

B. PUBLIC BUILDING EXCEPTION

Generally, a governmental entity is immune from tort liability for actions that accrue while it is performing a governmental function. MCL 691.1407(1); MSA 3.996(107)(1). "This immunity is broad in scope, subject to a limited number of narrowly drawn exceptions." *Reardon v Dep't of Mental Health*, 430 Mich 398, 407; 424 NW2d 248 (1988). The exception at issue in this case is the public building exception, which states in part:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowl-

edge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. [MCL 691.1406;   MSA 3.996(106).]

This Court has established a five-part test to determine whether the public building exception governs in a particular case. A plaintiff must establish that (1) a governmental agency is involved, (2) the public building in question is open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable period. *Jackson v Detroit*, 449 Mich 420, 428; 537 NW2d 151 (1995).   The third prong of this test is at issue in this case: whether a dangerous or defective condition exists *in the building itself.*

Because the public building exception applies only where the physical condition of the building itself causes the injury, the government's duty is to "maintain safe public buildings, but not necessarily safety in public buildings." *Reardon, supra* at 417. We have previously held that a building may be dangerous or defective because of improper design, faulty construction, or the absence of safety devices. *Hickey,* 439 Mich 422. However, whether a building is dangerous or defective must be determined in light of the uses or activities for which it is assigned. *Id.* Thus, in certain circumstances the public building exception will not apply where proper supervision would have offset any shortcomings in the configuration of the room. *Id.* As we explained in *de Sanchez v Mental Health Dep't*:

In *Reardon* and *Schafer* [*v Ethridge*, 430 Mich 398], sexual assaults on a student and patient were found not to state a claim in avoidance of governmental immunity because the building, which was being used for its intended purpose, was not defective. Unlike *Bush* [*v Oscoda Area Schools*, 405 Mich 716; 275 NW2d 268 (1979),] and *Williamson* [*v Dep't of Mental Health*, 176 Mich App 752; 440 NW2d 97 (1989)], in which defects in the buildings were allegedly contributing causes of the injuries, the consolidated cases of *Reardon* and *Schafer* involved nothing more than mere negligence. It is in this context that the Court in *Schafer* declared that "proper supervision would have offset any shortcomings in the configuration of the room." [455 Mich 83, 93; 565 NW2d 358 (1997).]

In other words, where the essence of a plaintiff's claim is negligent supervision, the plaintiff cannot properly allege a building defect merely because a superior building design would have facilitated better supervision. But where the essence of a claim is a defect in the building itself, "summary disposition may not be granted simply by claiming that proper supervision would have averted the injury." *Id.* at 95-96. We must decide whether plaintiffs have properly alleged that this pool, when used for its proper purpose, was defective, or whether plaintiffs' claims amount to nothing more than negligent supervision.

### III. ANALYSIS

The first step in our analysis is to determine the intended use or purpose of the pool. Defendant argues that, at the time of the injury, the assigned use of the pool was for *swimming, not diving*. As the Court explained in *Bush*, when a mathematics classroom was used as a physical science room, it "had to meet the standards of a physical science room although it had once been a mathematics room." 405

Mich 732. Defendant argues that the same principle should apply with equal force to this case. Since the specific purpose of this class was limited to swimming, plaintiffs must allege a danger or defect in the pool relating to swimming, not to diving. Under the defendant's theory, any claim based on an injury sustained while diving into the pool would be based on a misuse of the public facility, and the government should not owe a duty of care for such misuse.

We disagree with the defendant's characterization of diving into the pool as misuse of the pool. It is clear that diving was a contemplated use of this pool. First, the pool was equipped with diving facilities at one end, which contained springboards for the specific purpose of diving into the pool. Second, the shallower end of the pool was equipped with starting blocks, which provide an elevated platform for competitive swimmers to dive off at the start of a race. Third, the Michigan Department of Public Health's administrative rules regarding public swimming pools require, in part, that "[w]here the . . . depth [of the pool] is less than 5.0 feet . . . the words 'no diving' shall be placed between the depth markers on the deck." 1983 AACS, R 325.2132(2). The import of this rule is that diving is not allowed in less than five feet of water, but it may be allowed in five or more feet of water.[2] Fourth and finally, plaintiffs presented testimony that students in the class often dived into the pool without being admonished for doing so.

To accept defendant's argument, we would have to focus solely on the word "swimming" in the title of

---

[2] The rules do allow diving in less than five feet of water for competitive swimming. "Nothing in this rule shall preclude the use of a swimming pool for competitive swimming." 1983 AACS, R 325.2132(4).

this structure. However, as we explained in *Bush*, "[a] school is not a school because it is called one, but because it is used and functions as one." 405 Mich 732. Similarly, the use of a swimming pool is not limited only to swimming because the title of the structure is not "swimming and diving pool." In this case, we believe it was not a misuse of the pool to enter into it by diving. Defendant's duty was to construct, repair, and maintain the swimming pool in such a way that it was safe for both swimming and diving, and defendant can be held liable for any defective or dangerous condition that injured a person who was either swimming or diving.[3]

Once we have determined that the public building was being used properly, we must next review plaintiffs' proofs to determine if they have alleged an actual defect in the building. Plaintiffs argue that a dangerous or defective condition existed in the pool because of faulty construction and improper design. In support of these allegations, plaintiffs point to the affidavits of Dan Nearhood, a graphic artist, and Frederick Carter, a water-safety specialist. Mr. Nearhood testified by affidavit that his measurements of the pool indicated that the pool depth markers were mismarked in the area where the dive took place, and that the pool floor was uneven. In particular, the spot from which plaintiff dived was marked as 5' deep, but was in fact anywhere from 4' 10¼" deep to 4' ¾" deep.

Mr. Carter, the water-safety specialist, stated in his first affidavit:

---

[3] This does not mean that the defendant has to make the entire pool safe for diving. Defendant's duty only extends to areas where diving is appropriate or allowed.

> From the design standpoint, the sharp up-slope of the pool bottom at the exact location a dive from the side of the pool might occur and the fact that most pools are constructed to be deeper as you move away from the wall, left this high school student with a false understanding of the pool. To worsen the situation, the depth marker marked the pool at the deepest point next to the wall and not the shallower depth where the dive would likely occur.

In a second affidavit, Mr. Carter opined that "the design failure of the pool bottom at the point of injury completely removes the issue of supervision. No amount of supervision could offset the poor design and layout of both areas." Plaintiffs argued before both the trial court and the Court of Appeals that this evidence was sufficient to prevent summary disposition.

Both the lower courts disagreed, holding that the plaintiffs' claim was really one of improper supervision rather than an actual building defect. In particular, the Court of Appeals majority evaluated plaintiffs' proofs, and found that they were insufficient to support the claim of a design defect:

> Contrary to what plaintiffs argue, a fair reading of the letter of aquatic safety specialist Frederick S. Carter did not raise a fact question regarding a structural defect in the pool; it merely reached the unsupported conclusion that the pool's sloping bottom "left this high school student with a false understanding of the pool." Similarly, the affidavit of graphic artist Dan Allen Nearhood merely reached the conclusion that the pool was less than five feet deep and had a sloping bottom. In light of plaintiffs' pleadings indicating a belief that the pool was 3½ feet deep where he dived, this affidavit does not advance his position. Finally, the inspection report prepared by an Oakland County Health official did not reveal that the bottom of the pool contained areas with variations in surface levels, as plaintiffs assert. Rather,

the report stated that "pool bottom appears to be discol-
ored, black areas need cleaning and possible resurfacing."
In the absence of evidence that Devin's injuries were the
result of a structural defect rather than lack of instruction
or supervision, the trial court correctly declined to find that
this case came within the defective building exception to
governmental immunity. [Slip op at 2-3.]

We disagree with the majority of the Court of
Appeals analysis of the evidence. Because this is an
appeal of a motion for summary disposition based on
MCR 2.116(C)(7), a reviewing court must accept all
the nonmoving party's uncontested allegations and
evidence as true. *Patterson* at 432. As the above pas-
sage indicates, the Court of Appeals failed to construe
plaintiffs' evidence in a light most favorable to the
nonmoving party. The Court found that plaintiffs'
experts' conclusions were not credible, and, there-
fore, that there was no evidence of an actual defect in
the pool. However, the purpose of summary disposi-
tion is not to evaluate the weight of plaintiffs' proofs.
Rather, the reviewing court's task is to determine
whether the plaintiffs have stated a valid claim at law.

When plaintiffs' proofs are given the proper defer-
ence, they allege a defect within the pool.[4] As stated
in the Court of Appeals dissent:

Plaintiffs asserted, and presented affidavits and a letter in
support of their claims, that the pool depth markers were
mismarked; that the pool floor was uneven and the pool
was not five feet deep as it was supposed to be, but was
less, in some spots 4½ feet and in some spots 4 feet ¾

---

[4] The only issue presented in the motion for summary disposition and
argued on appeal is the existence of an actual defect in the pool. Thus, we
do not express any opinion regarding the plaintiffs' ability to prove any
other aspect of their case.

inches deep; that the pool had "a sharp up-slope" at the location a dive from the side of the pool might occur, whereas most pools are constructed to be deeper as one moves away from the wall; and that the pool did not comply with the applicable statutes and rules. These claims allege a building defect rather than a failure of supervision.[5]

### IV. CONCLUSION

For these reasons, we believe that summary disposition was improperly granted under MCR 2.116(C)(7). Plaintiffs have alleged an actual defect in the swimming pool for purposes of the public building exception to governmental immunity, MCL 691.1406; MSA 3.996(106). The decision of the Court of Appeals is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

MALLETT, C.J., and BRICKLEY, BOYLE, WEAVER, KELLY, and TAYLOR, JJ., concurred with CAVANAGH, J.

---

[5] Although we rely in part on the testimony of plaintiffs' water safety expert, *ante* at 678-679, we do not rely on the expert's statements regarding the subjective perceptions of Devin Sewell. While Sewell's perceptions may be relevant to other aspects of plaintiff's case, they are not sufficient to create a question of fact regarding the existence of a building defect.