RENNY v DEPARTMENT OF TRANSPORTATION

Docket No. 257018. Submitted March 8, 2006, at Lansing. Decided March 21, 2006, at 9:00 a.m. Leave to appeal sought.

Karen and Charles Renny brought an action in the Court of Claims against the Michigan Department of Transportation, seeking damages relating to injuries sustained by Karen Renny when she slipped and fell on a patch of snow and ice outside a highway rest area building. The plaintiffs alleged that the injuries arose from a defect in the rest area building and that the public building exception to governmental immunity applied to their claim. The court, Michael J. Baumgartner, J., granted summary disposition for the defendant, ruling that the claim is barred by governmental immunity because the sidewalk on which Karen Renny slipped and fell was not a part of the rest area building. The plaintiffs appealed.

The Court of Appeals *held*:

1. The Court of Claims erred in granting summary disposition for the defendant. The plaintiffs have alleged sufficient facts to come under the public building exception to governmental immunity and have produced sufficient evidence to establish a valid claim at law. The allegation that the injury-causing condition (the patch of snow and ice) arose from a dangerous or defective condition of the building itself (inadequate roof insulation and lack of gutters) is sufficient to meet the pleading requirement of the public building exception to governmental immunity.

2. The patch of snow and ice was not a transitory condition because there was evidence presented that the condition was continually present in the cold seasons. Further, the allegation indicated that the issue was not one of negligent maintenance.

Reversed and remanded for further proceedings.

GOVERNMENTAL IMMUNITY — PUBLIC BUILDING EXCEPTION — DANGERS OUTSIDE BUILDINGS — PLEADING.

An allegation of injury caused by a dangerous condition outside a public building, which danger was created by a dangerous or defective condition of the building itself, is sufficient to meet the

pleading requirements for a claim under the public building
exception to governmental immunity (MCL 691.1406,
691.1407[1]).

*O'Reilly Rancillio P.C.* (by *Robert Charles Davis*) for
Karen and Charles Renny.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,*
Solicitor General, and *Harold J. Martin,* Assistant
Attorney General, for the Department of Transportation.

Before: SMOLENSKI, P.J., WHITBECK, C.J., and
O'CONNELL, J.

PER CURIAM. In this case arising from a slip and fall
incident, plaintiffs Karen Renny and Charles Renny
appeal as of right the Court of Claims order granting
defendant Michigan Department of Transportation
(MDOT) summary disposition pursuant to MCR
2.116(C)(7) and (C)(8). On appeal, the Rennys argue
that the trial court erred in finding that they failed to
state a claim within the "public building" exception to
governmental immunity. We reverse and remand.

I. BASIC FACTS AND PROCEDURAL HISTORY

On January 8, 2000, the Rennys stopped at a road-
side rest area located in Roscommon County, Michigan.
There is no dispute that the rest area is within the
jurisdiction and control of MDOT, a government agency,
and that it is held open to the public. On leaving the
restroom building, Karen Renny encountered a patch of
snow and ice that was located directly in the path of the
building's doorway. The ice caused Karen Renny to slip
and fall, and she sustained various injuries to her right
wrist, which injuries required several corrective surger-
ies. The Rennys filed suit in the Court of Claims against

MDOT, seeking recovery for breach of statutory duty, negligence, and loss of consortium.[1]

In their complaint against MDOT, the Rennys alleged that

[the] accumulation of ice and snow occurred as a result of the defective condition of the roof of the building located immediately above [the] entrance/exit way to the building. By way of illustration, not limitation, [the] defective conditions include the failure to install and maintain gutters and downspouts to redirect melting snow and ice on the roof above the entrance/exit away from the walkway.

Alan Burns, an attendant at the rest area, maintained the rest stop daily, clearing snow and ice and salting the walkways. Beginning in 1999, Burns observed that snow and ice would melt off the building roof, as a result of the building's interior "heat loss," causing a "slippery spot" to develop and freeze in front of one of the building's doors. Burns stated that he first notified MDOT that this condition existed in 1999; other evidence suggested that MDOT had been aware of the condition "for many years." Further evidence indicated that the ongoing condition was presumed to be a result of both a lack of gutters and inadequate ceiling insulation: the purported heat loss and ice and snow melting were consequences of inadequate insulation, and the water runoff and ice formation were consequences of a lack of gutters and downspouts.

MDOT subsequently moved for summary disposition pursuant to MCR 2.116(C)(7) and (C)(8), arguing both that public building *design* defects are not contem-

---

[1] The Rennys filed a companion case in the Roscommon Circuit Court against the Roscommon County Road Commission and Roscommon Township. The two cases were later consolidated. The parties subsequently stipulated Roscommon Township's dismissal, and the trial court granted Roscommon County Road Commission summary disposition.

plated by the statutory exception to immunity and that dangerous or defective conditions outside public buildings likewise do not impose liability. The trial court granted MDOT's motion pursuant to MCR 2.116(C)(7) and (C)(8), concluding that MDOT was entitled to immunity under MCL 691.1406 and *Horace v City of Pontiac*,[2] because the sidewalk on which Karen Renny fell was not a part of the rest area building.

## II. GOVERNMENTAL IMMUNITY

### A. STANDARD OF REVIEW

The Rennys argue that we should review this case as having been granted under the standards applicable to MCR 2.116(C)(7). MDOT argues that we should proceed under the standards applicable to MCR 2.116(C)(8).

"Under both subrules, all well-pleaded allegations are accepted as true, and construed most favorably to the nonmoving party."[3] But in reviewing motions brought pursuant to MCR 2.116(C)(8), review is limited to the pleadings alone.[4] In reviewing motions pursuant to MCR 2.116(C)(7), courts may also consider "the affidavits, depositions, admissions, and other documentary evidence filed by the parties, and determine whether they indicate that defendants are in fact entitled to immunity."[5] And when considering a motion

---

[2] *Horace v City of Pontiac*, 456 Mich 744; 575 NW2d 762 (1998).

[3] *Wade v Dep't of Corrections*, 439 Mich 158, 162-163; 483 NW2d 26 (1992).

[4] *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999); *Salinas v Genesys Health Sys*, 263 Mich App 315, 317; 688 NW2d 112 (2004), citing *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 266; 671 NW2d 125 (2003); MCR 2.116(G)(5).

[5] *Poppen v Tovey*, 256 Mich App 351, 353-354; 664 NW2d 269 (2003), citing *Pusakulich v Ironwood*, 247 Mich App 80, 82-83; 635 NW2d 323 (2001); MCR 2.116(G)(6).

brought under both MCR 2.116(C)(7) and (C)(8), it is proper for the trial court to review all the material submitted in support of, and in opposition to, the plaintiff's claim.[6]

Because, in ruling on MDOT's motion for summary disposition, the trial court relied on evidence independent of the allegations in the Rennys' complaint, we conclude that review under MCR 2.116(C)(7) is more appropriate.

MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the grounds that a claim is barred because of immunity granted by law. The governmental immunity act,[7] provides "broad immunity from tort liability to governmental agencies whenever they are engaged in the exercise or discharge of a governmental function[.]"[8] To survive a C(7) motion raised on these grounds, the plaintiff must allege facts warranting the application of an exception to governmental immunity.[9] Neither party is required to file supportive material; any documentation that is provided to the court, however, must be admissible as evidence.[10] The plaintiff's well-pleaded, factual allegations, affidavits, or other admissible documentary evidence must be accepted as true and construed in the plaintiff's favor, unless contradicted by documentation submitted by the movant.[11]

---

[6] *Patterson v Kleiman*, 447 Mich 429, 431-435; 526 NW2d 879 (1994).

[7] MCL 691.1401 *et seq.*

[8] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 595; 363 NW2d 641 (1984); see MCL 691.1407(1).

[9] *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001); *Smith v Kowalski*, 223 Mich App 610, 616; 567 NW2d 463 (1997).

[10] *Maiden, supra* at 119.

[11] MCR 2.116(G)(5), (6); *Maiden, supra* at 119; *Smith, supra* at 616.

We review de novo a trial court's decision on a motion for summary disposition.[12] If there is no reasonable dispute regarding the facts, either regarding their nature or their legal effect, the question of the applicability of the governmental immunity doctrine is a question of law that we also review de novo.[13] We review de novo questions of statutory interpretation.[14]

### B. PUBLIC BUILDING EXCEPTION

The Rennys argue that the trial court erred in granting summary disposition for MDOT on the basis of governmental immunity when Karen Renny's injuries arose from a known defective condition in a public building that MDOT failed to remedy. More specifically, the Rennys argue that the rest area building was clearly defective because of improper insulation and lack of gutters, thereby causing snow and ice to melt, run off the building roof, and create ice patches in front of the building's door, a condition that could have been easily prevented by the installation of appropriate insulation and gutters.

MDOT argues, however, that Karen Renny's injuries must be a direct consequence of a structural defect of the building itself. Transient conditions, like the build-up of ice, MDOT argues, do not satisfy this standard. MDOT contends that a patch of ice on a sidewalk was the condition that gave rise to Karen Renny's injuries and was a condition that was clearly not "of the building itself," as is required for liability.

[12] *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003).

[13] *Poppen, supra* at 354, citing *Diehl v Danuloff*, 242 Mich App 120, 123; 618 NW2d 83 (2000); *Baker v Waste Mgt of Mich, Inc*, 208 Mich App 602, 605; 528 NW2d 835 (1995).

[14] *American Alternative Ins Co, Inc v York*, 470 Mich 28, 30; 679 NW2d 306 (2004).

As a general matter, a government agency is immune from tort liability when engaging in a government function, unless the activity engaged in falls within one of several statutory exceptions to the governmental immunity act.[15] Here, it is not disputed that MDOT is a government agency that was engaged in a governmental function while overseeing the subject roadside rest area.[16] However, the "public building" exception,[17] which must be narrowly construed,[18] permits the government agency's immunity to be pierced. The purpose of the exception is to protect the public from injury by imposing a duty on the government agency to maintain safe public buildings.[19] Accordingly, this exception provides that "[g]overnmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public."[20] If the governmental agency breaches that obligation, it is

> liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the dangerous and defective condition of the public building and time to repair the same shall be conclusively presumed when such defect existed so

---

[15] MCL 691.1407(1); *Ross, supra* at 620.

[16] MCL 691.1401(b), (d), and (f).

[17] MCL 691.1406.

[18] *Fane, supra* at 74; *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000).

[19] *Steele v Dep't of Corrections*, 215 Mich App 710, 713; 546 NW2d 725 (1996).

[20] MCL 691.1406.

as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place.[21]

The Michigan Supreme Court has expanded on the statutory language of the public building exception to require that a plaintiff meet the following five-pronged test. In order to overcome the general rule of immunity, the claimant must demonstrate that

"(1) a governmental agency is involved, (2) the public building in question was open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable period of time or failed to take action reasonably necessary to protect the public against the condition after a reasonable period."[22]

The third element is at the heart of this appeal; that is, whether a defective or dangerous condition of the building itself existed. And in analyzing that element, this case requires us to address an issue specifically left unanswered by *Wade*: whether an action can be cognizably pleaded under the public building exception to governmental immunity where the dangerous condition that directly caused the plaintiff's injury arose from a dangerous or defective condition of the building itself.[23] In the context of this case, that inquiry translates to consideration of whether this action is cognizably pleaded under the public building exception to the governmental immunity doctrine when the patch of ice,

---

[21] *Id.*

[22] *Fane, supra* at 75, quoting *Kerbersky v Northern Mich Univ*, 458 Mich 525, 529; 582 NW2d 828 (1998); see also *Maskery v Univ of Mich Bd of Regents*, 468 Mich 609, 614-615; 664 NW2d 165 (2003).

[23] *Wade, supra* at 169 n 11, 171.

which indisputably directly caused Karen Renny's injury, arose from a dangerous or defective condition of the rest stop building.

### (1) EXISTENCE OF A DANGEROUS OR DEFECTIVE CONDITION

Turning to the existence of a defective or dangerous condition of the building, MDOT argues both that the Rennys' claims center on defective design, a condition that MDOT contends is not excepted under the public building exception to immunity, and that the gravamen of the Rennys' complaint is, in actuality, negligent supervision, which is an allegation likewise not excepted.[24] However, MDOT's claim that the public building exception does not apply to the Rennys' claim based on defective design is without merit. The Michigan Supreme Court has held that "a building may be dangerous or defective because of *improper design*, faulty construction, or the absence of safety devices."[25] Further, the Court has held that " '[a]s long as the danger of injury is presented by a physical condition of the building, it little matters that the condition arose because of improper design, faulty construction, or absence of safety devices.' "[26] Design defects are, therefore, actionable under the public building exception to immunity.

---

[24] See *de Sanchez v Dep't of Mental Health*, 467 Mich 231, 238; 651 NW2d 59 (2002) (providing that injuries resulting from a failure to supervise are not encompassed in the public building exception).

[25] *Sewell v Southfield Pub Schools*, 456 Mich 670, 675; 576 NW2d 153 (1998) (emphasis added); *Bush v Oscoda Area Schools*, 405 Mich 716, 730; 275 NW2d 268 (1979); *Williamson v Dep't of Mental Health*, 176 Mich App 752, 758; 440 NW2d 97 (1989).

[26] *Pierce v City of Lansing*, 265 Mich App 174, 178; 694 NW2d 65 (2005), quoting *Reardon v Dep't of Mental Health*, 430 Mich 398, 410; 424 NW2d 248 (1988).

Whether a public building is defectively designed is determined by considering the uses to which it is put—do its uses conform to the building's intended use.[27] The question turns on the plaintiff's proofs: whether they establish a building defect or, rather, some form of negligence.[28] While cases have acknowledged that negligence, in conjunction with a defect of the building itself, may give rise to liability, the former *alone* cannot so operate. Contrary to MDOT's interpretation of the Rennys' claims, however, there is nothing indicating that their claims hinge on MDOT's failure to maintain the sidewalk. In fact, record evidence indicates the futility of such maintenance. The Rennys' claim focuses on the nonexistence of proper gutters and downspouts to redirect melting snow and ice on the roof above the doorway away from the walkway.

Unquestionably, Karen Renny was using the rest area for its designed purpose. Further, the Rennys presented sufficient evidence to the trial court that indicated that heat loss from the building, resulting from inappropriate insulation and a lack of gutters, caused snow and ice to melt, drip, and form slippery spots on the sidewalk; that this condition continuously caused ice patches to form; that no amount of supervision effectively rendered the condition safe; and that the condition had existed seasonally for years.[29] Further, the roof was unquestionably part of the building.[30] Therefore, we conclude that the Rennys pleaded facts sufficient to establish a design defect of the building.

---

[27] *Sewell, supra* at 676.

[28] *Id.* at 678-681.

[29] See *Karianen v Ewen Trout Creek Consolidated School Dist*, unpublished opinion per curiam of the Court of Appeals, issued July 31, 1998 (Docket No. 204073), slip op at 2.

[30] See *Horace, supra* at 756-757 n 9 (stating that an outside overhang is part of the building).

(2) CONDITION OF THE BUILDING ITSELF

Having concluded that a defective condition of the rest stop building did indeed exist, we next consider whether the public building exception may be applied where the dangerous condition that actually and directly caused the plaintiff's injury was not the absence of insulation and gutters, but ice that formed on the sidewalk adjacent to the entrance of the building. Given the evolution and current stance of case law applicable to the public building exception, we conclude that even under the narrow reading required of all exceptions to the governmental immunity doctrine, a cognizable action exists under the public building exception when the plaintiff pleads that the dangerous condition that directly caused the plaintiff's injury was directly attributable to a dangerous or defective condition of the building itself.

(a) REVIEW OF CASE LAW

As mentioned, in addressing this issue we are answering a question specifically left unanswered by *Wade*: whether an action can be cognizably pleaded under the public building exception to the governmental immunity where the dangerous condition that directly caused the plaintiff's injury arose out of a dangerous or defective condition of the building itself.[31]

In *Wade*, the plaintiff, a prison inmate, slipped on a slippery substance, grease or oil, that had accumulated on the floor of a correctional facility, a public building.[32] In concluding that the plaintiff could not recover under the public building exception, the *Wade* Court explained

---

[31] *Wade, supra* at 169 n 11, 171.

[32] *Id.* at 160-161.

that, under *Reardon v Dep't of Mental Health*,[33] the government's duty to maintain and repair is related to the structural condition of the building, and liability could only be imposed where the injury resulted "from a dangerous or defective condition *of* the building[.]"[34] Specifically, in *Reardon*, the Court had clarified the scope of the exception by explaining that "the duty imposed by the public building exception relates to dangers actually presented by the building itself."[35] Thus, under the *Reardon* rule, the exception no longer applied to all injuries that were merely incurred inside a public building.[36] In applying the *Reardon* holding, the *Wade* Court held that the statutory scheme did not contemplate "transitory conditions" that were, in actuality, claims of negligent janitorial care or failure to perform ordinary daily maintenance, and were not related "to the permanent structure or physical integrity of the building."[37]

However, when the *Wade* decision was released, certain decisions explicitly rejecting the narrow *Reardon* interpretation were still considered good law. In *Tilford v Wayne Co Gen Hosp*, the Michigan Supreme Court addressed whether the entrance walk of a public building came within the public building exception.[38] In *Tilford*, the plaintiff slipped and fell on a patch of ice as she was entering Wayne County General Hospital.[39] The Court reasoned that an overly narrow construction

[33] *Reardon, supra* at 415-416.

[34] *Wade, supra* at 163.

[35] *Reardon, supra* at 415.

[36] *Dew v Livonia*, 180 Mich App 676, 679; 447 NW2d 764 (1989).

[37] *Wade, supra* at 161, 168, 170-171.

[38] *Tilford v Wayne Co Gen Hosp*, 403 Mich 293, 297; 269 NW2d 153 (1978) (opinion by FITZGERALD, J.), overruled by *Horace, supra* at 750 n 3.

[39] *Tilford, supra* at 297.

of the exception conflicted with the protective purpose of the exception.[40] The Court concluded that "[t]he premises relating to the public's ingress to and egress from a public building, which are under the exclusive control of the governmental agency, are inextricably connected with the public building itself."[41] Therefore, under the *Tilford* holding, ice on a passageway to a public building constituted a dangerous or defective condition under the public building exception.

As indicated in *Wade*, the *Tilford* rule was later narrowed considerably.[42] In decisions after *Tilford*, this Court chose not to extend the reach of the exception to parking lots[43] or other property adjacent to a public building.[44] But with the release of *Horace v City of Pontiac*, *Tilford* was specifically overruled.[45]

In the consolidated cases of *Horace*, the Supreme Court considered two cases related to the condition of walkways adjacent to an entrance or exit of rest areas. In both cases, the Court held that the plaintiffs, each of whom fell in a hole or crack while walking on a cement walkway that was near the entrance of a rest area building but not attached to the building, had failed to plead injuries in avoidance of governmental immunity.[46] While outlining the pertinent case law, the Court declared that *Tilford* was no longer good law because it was inconsistent with *Wade* to the extent that "the

---

[40] *Id.* at 299.

[41] *Id.*

[42] *Wade, supra* at 167.

[43] See *Merritt v Dep't of Social Services*, 184 Mich App 522, 523; 459 NW2d 10 (1990).

[44] See *Hall v Detroit Bd of Ed*, 186 Mich App 469, 470-471; 465 NW2d 12 (1990); *Dew, supra* at 679.

[45] *Horace, supra* at 750 n 3.

[46] *Id.* at 747-748, 757-758.

snow and ice on which the plaintiff fell was a transitory condition not within the public building exception."[47] The Court explained that its preemptory reversal of the Court of Appeals decision in *Henkey v Grand Rapids*,[48]

> could be understood as standing for the proposition that a fall on snow and ice is not within the exception because it is a transitory condition or that a fall adjacent to an entryway, but still outside the building, is not within the exception because the fall was not a result of the building itself, or both of these propositions.[49]

The Court then opined that only under an impermissibly broad reading of the public building exception could it be held that the exception applied to anything but the building itself.[50] In further analyzing the issue, the Court noted that the *Reardon* Court had quoted the definition of the word "of" from Black's Law Dictionary[51] to evaluate the statutory language of the exception.[52] But the *Horace* Court declined to accept that definitional reference as an indication of the Court's intention to read the exception broadly.[53] Indeed, the *Horace* Court explained that the common, nonlegal

[47] *Id.* at 750 n 3.

[48] *Henkey v Grand Rapids*, 185 Mich App 56, 57; 460 NW2d 271 (1990), rev'd 440 Mich 867 (1992).

[49] *Horace, supra* at 750 n 3.

[50] *Id.* at 754.

[51] Black's Law Dictionary (5th ed) defines "of" as follows:

A term denoting that from which anything proceeds; indicating origin, source, descent, and the like; as, he is of noble blood. Associated with or connected with, usually in some causal relation, efficient, material, formal, or final. The word has been held equivalent to after; at, or belonging to; in possession of; manufactured by; residing at; from.

[52] *Horace, supra* at 755, citing *Reardon, supra* at 410-411.

[53] *Id.* at 755-756.

definition of the term "of," as provided by *Webster's Collegiate Dictionary*, was more appropriate and adopted the following definition "as the most obvious definition applicable here": " 'used to indicate possession.' "[54] The Court declined to accept that the ground adjacent to a public building was *of* the public *building*.[55] Therefore, under the *Horace* decision, injuries occurring on property adjacent to a public building, such as on sidewalks and walkways, were no longer encompassed by the public building exception.[56]

Clarifying *Horace*, however, the Supreme Court later concluded that defective conditions existing on the exterior of a building, but nevertheless *of* the building itself, are within the public building exception to immunity.[57] In *Fane*, the Court explained that determinations concerning exterior structures alleged to come under the public building exception rubric involved considering "the characteristics of the building and of the item in question."[58] "If it must be determined whether the building possesses the item, surely the relative characteristics of both must be evaluated."[59] Thus, in *Fane*, liability attached for a defective condition presented on an elevated terrace outside, but leading into, a public building.[60] Central to the *Fane* Court's analysis was a finding that the terrace was "physically connected to and not intended to be removed from the building, making the terrace part 'of a public building.' "[61]

---

[54] *Id.* at 756.

[55] *Id.* at 756-757.

[56] *Id.* at 757.

[57] *Fane, supra* at 79.

[58] *Id.* at 77, 80.

[59] *Id.* at 77.

[60] *Id.* at 71, 79.

[61] *Id.* at 79, see also *id.* at 81.

In light of the preceding evolution of the public building exception and what we discern as *Fane*'s judicious retreat from an overly rigid and narrow interpretation of the scope of the exception, we now consider the situation where the plaintiff has pleaded that the dangerous condition that directly caused the plaintiff's injury arose from a dangerous or defective condition of the building itself.[62]

### (b) APPLICATION TO PRESENT FACTS

For clarification, we first note that this case is outside the scope of the *Fane* holding because the sidewalk where Karen Renny fell was not part of the public building—it was not physically connected to the building. And we acknowledge that reading *Horace* and *Wade* together leads to the apparent conclusion that liability is not permitted for Karen Renny's injuries when they occurred as the result of a transitory condition on the ground adjacent to a public building. But *Horace* is significantly distinguishable because, unlike a hole or crack in the sidewalk, the cause of which was unknown, the cause of Karen Renny's injury is alleged to have directly emanated from a defective condition of the rest area building. It is for this reason, that we carefully clarify in our holding today that we are in no way attempting to revive the *Tilford* rule, which would have allowed for liability when a plaintiff slips on ice on a sidewalk merely adjacent to a building. Because Karen Renny slipped on a patch of ice on the sidewalk outside the rest area building *and* because she alleges that the ice accumulation was directly attributable to a defective condition of the building, we find this case distinguishable from *Tilford* and *Horace*.

---

[62] See *Wade, supra* at 169 n 11, 171.

MDOT argues that, pursuant to *Wade*, the Rennys cannot establish that a defective condition existed that caused Karen Renny's injuries because the ice on which Karen Renny slipped was a transitory condition that, at best, establishes a claim for negligent janitorial care. But the *Wade* Court ruled that the substance on the prison floor was not a defective condition within the meaning of the public building exception to immunity because it was a transitory condition not relating to the building itself.[63] We conclude that this case is distinguishable both because the condition was not transitory and because the injury-causing condition was, arguably, directly attributable to the building's defective condition.

In *Wade*, the plaintiff did not allege that the dangerous condition arose from a dangerous or defective condition of the building itself, and the Court, therefore, concluded that the mere accumulation of grease or oil did not amount to a defect in the building itself.[64] But, here, the Rennys specifically alleged that

> [the] accumulation of ice and snow occurred as a result of the defective condition of the roof of the building located immediately above [the] entrance/exit way to the building. By way of illustration, not limitation, [the] defective conditions include the failure to install and maintain gutters and downspouts to redirect melting snow and ice on the roof above the entrance/exit away from the walkway.

---

[63] *Id.* at 168-171.

[64] *Id.* at 169 n 11, 170. In light of that Court's comments in n 11, we opine that, had the *Wade* plaintiff alleged, for instance, that the substance on which he slipped had dripped from a pipe incorporated into the building, his claim would have survived summary disposition. It would be as illogical to conclude that the government was immune from liability because the pipe itself did not directly injure the plaintiff as it would be to conclude in this case that the government is immune because Karen Renny was not injured by the roof itself.

We conclude that this allegation, that the injury-causing condition arose from a dangerous or defective condition of the building itself, is sufficient to meet the pleading requirement of the public building exception.

We further conclude that the ice and snow patch in this case was not a transitory condition, as those in *Wade* and *Henkey* were, because there was evidence presented that the condition was continually present in the cold season. In *Pierce*, the government defendant attempted to argue that it was not liable because the elevator malfunction that led to the plaintiff's injury was a transitory condition.[65] But this Court distinguished the elevator malfunction from the spill in *Wade* by noting that *Pierce* involved an alleged mechanical defect to a physical structure, and the plaintiff had presented evidence of longstanding mechanical problems with the elevator.[66] This Court then concluded that the alleged elevator malfunction was not a transitory condition falling outside the scope of the public building exception.[67] Applying this reasoning to the present case leads to a conclusion that the ice accumulation was not a transitory condition falling outside the scope of the exception because the condition was allegedly caused by a structural design defect in the rest stop building and because the Rennys presented evidence that this was a longstanding problem.

Additionally, with respect to the weight of the Rennys' evidentiary support, we note that, although not precedentially binding, this Court previously addressed very similar circumstances to those presented in this appeal in *Karianen*.[68] While this Court concluded that

---

[65] *Pierce, supra* at 181.

[66] *Id.*

[67] *Id.*

[68] *Karianen, supra.*

the plaintiff failed to meet her burden in overcoming immunity, it did indicate that, in order for her to do so, she

> would have had to produce evidence that the building was defective[,] . . . [t]hat this defect existed at the time of [her] fall and, combined with the particular conditions that obtained on the day in question, resulted in the formation of an amount of ice that would not have formed had the defect not existed.[69]

Implicit in the *Karianen* Court's analysis was the understanding that the demonstration of such a defect—a defect in the building that allowed melting snow to drip onto the sidewalk, causing slip and fall injuries—could satisfy the plaintiff's burden under the public building exception to governmental immunity.

Here, the Rennys provided testimony from various sources that supported a finding that the building was defective, that the defect existed when she fell, and that the conditions resulted in the formation of ice that would not have formed had the defect not existed. As mentioned, rest area attendant Alan Burns testified that beginning in 1999 he observed that snow and ice would melt off the building roof, as a result of the building's interior "heat loss," causing a "slippery spot" to develop and freeze in front of one of the building's doors. Further, in a letter sent to MDOT Resource Analyst Tim Jones, Gloria Burns, manager/chief financial officer of the Roscommon County Road Commission, stated that "[w]ater drip[ped] off of the roof continually." Similarly, in another letter to Jones, Bob Bedell, Supervisor at the Roscommon County Road Commission, stated that "in the winter it is constantly dripping." Bedell added that because of the heat loss

---

[69] *Id.* at 2.

and moisture problem, "[y]ou can salt it all you want but within the hour it will be ice again." And Kevin Lewis, who performed the insulation installation, testified that the insulation previously existing in the rest area building was not "adequate insulation to prevent heat loss," resulting in melting snow and ice. He confirmed that the presence of gutters and downspouts would have prevented melting snow and ice from dripping off the rest area rooftop.

We conclude that Karen Renny's injury was arguably a direct consequence of the rest area building's defective condition; that is, we conclude that her injuries could legally be considered to have resulted from a defective condition of the public building itself.[70] We refrain, however, from actually deciding the factual question whether the ice was caused by the defective condition of the building.[71] But considering the Rennys' pleadings in the light most favorable to them leads us to the conclusion that they have alleged a cause of action under the public building exception. There was a defective condition, albeit one existing on the exterior of the building, that was arguably "of the building itself." As opposed to sidewalk holes adjacent to the entrance of a public building, as in *Horace*, the Rennys have not pleaded that a defective condition existed independent of the rest area building. Rather they alleged that a defective condition of the rest area building itself caused Karen Renny's injuries. Thus, the trial court erred to the extent that it found that the defect causing Karen Renny's injuries was not "of" the rest area building.

---

[70] MCL 691.1406.

[71] *Schutte v Celotex Corp*, 196 Mich App 135, 138; 492 NW2d 773 (1992).

III. CONCLUSION

Construing all reasonable inferences in favor of the Rennys, summary disposition was improper. The Rennys have both alleged sufficient facts to come under the statutory exception to governmental immunity and produced sufficient evidence to establish a valid claim at law.

We reverse and remand for further proceedings. We do not retain jurisdiction.