# STATE OF MICHIGAN

# COURT OF APPEALS

ADRIENNE RENEE YOCHES, Individually and as Next Friend to SAMUEL JAMES YOCHES,

        Plaintiff-Appellee,

and

TROY GIBSON, JODI JERGOVICH, and STEVE JERGOVICH,

        Plaintiffs,

v

CITY OF DEARBORN,

        Defendant-Appellant,

and

ADAM FOREHAND,

        Defendant.

FOR PUBLICATION
July 13, 2017
9:05 a.m.

No. 330998
Oakland Circuit Court
LC No. 2014-140398-NO

---

LAURA JO LUBECK and RONALD LUBECK,

        Plaintiffs-Appellees,

v

CITY OF DEARBORN,

        Defendant-Appellant.

No. 331137
Oakland Circuit Court
LC No. 2014-140410-NO

---

TROY GIBSON, JODI JERGOVICH, and STEVE JERGOVICH,

        Plaintiffs-Appellees,

-1-

v

CITY OF DEARBORN and CAMP DEARBORN,

        Defendants-Appellants,

and

ADAM O'BRIEN FOREHAND,

        Defendant.

No. 331139
Oakland Circuit Court
LC No. 2014-141218-NO

---

LAUREN MARIE CALVIN and TROY RAY GIBSON,

        Plaintiffs-Appellees,

v

CITY OF DEARBORN, doing business as CAMP DEARBORN,

        Defendant-Appellant,

and

ADAM O'BRIEN FOREHAND,

        Defendant.

No. 331144
Oakland Circuit Court
LC No. 2014-141760-NO

---

CHARLOTTE BADER,

        Plaintiff-Appellee,

v

CITY OF DEARBORN,

        Defendant-Appellant,

and

ADAM FOREHAND,

No. 331147
Oakland Circuit Court
LC No. 2014-142520-NO

-2-

Defendant.

CYNTHIA CIALONE Individually and as Next
Friend to EMMANUELE SOUFANE,

Plaintiff-Appellee,

v

CITY OF DEARBORN,

Defendant-Appellant,

and

ADAM FOREHAND,

Defendant.

No. 331149
Oakland Circuit Court
LC No. 2015-145847-NO

ADRIENNE RENEE YOCHES, Individually and
as Next Friend to SAMUEL JAMES YOCHES,

Plaintiff-Appellee,

and

TROY GIBSON, JODI JERGOVICH, and STEVE
JERGOVICH,

Plaintiffs,

and

CYNTHIA CIALONE, Individually and as Next
Friend to EMMANUELLE SOUFANE,

Plaintiff/Counter-
Defendant/Appellee,

v

CITY OF DEARBORN,

No. 331630
Oakland Circuit Court
LC No. 2014-140398-NO

Defendant/Counter-Plaintiff/Third-
Party Plaintiff-Appellant,

and

ADAM FOREHAND,

Defendant,

and

HENRY FORD COMMUNITY COLLEGE
SUPPORT STAFF ASSOCIATION,

Third-Party Defendant-Appellee.

Before:  O'BRIEN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

These consolidated cases arise from a hayride accident at "Camp Dearborn" in Milford Township.  In Docket Nos. 330998, 331137, 331139, 331144, 331147, and 331149, defendant, the City of Dearborn ("the City"), appeals as of right the trial court's opinion and order denying its motion for summary disposition pursuant to MCR 2.116(C)(7).  The City argues that the trial court erred by concluding that the motor vehicle exception, MCL 691.1405, to governmental immunity under the Governmental Tort Liability Act ("GTLA"), MCL 691.1401 *et seq*., applied.  In Docket No. 331630, the City appeals by leave granted the trial court's opinion and order dismissing the City's third-party complaint against Henry Ford Community College Support Staff Association ("the Association") pursuant to MCR 2.116(C)(10).  *Yoches v City of Dearborn*, unpublished order of the Court of Appeals entered on July 27, 2016 (Docket No. 331630).  The City argues that the trial court erred by concluding that a "hold harmless agreement" was unenforceable as a matter of law due to a lack of consideration.  For the reasons set forth below, we affirm.

The City owns and operates Camp Dearborn, a recreational facility located in Milford Township.  The Association is a labor organization representing employees of Henry Ford Community College.  Plaintiffs are members of the Association.  Plaintiff Cynthia Cialone is a volunteer member of the Association's social committee.  Cialone acted as liaison in coordinating the "Fall Festival," an event to be held for the Association's members and their families at Camp Dearborn on October 27th, 2013.  As liaison, Cialone reserved a chalet at the facility, contracted with vendors to provide goods and services during the festival, and reserved two wagons for hayrides.  Immediately before the hayrides were to begin on October 27, Scott Schier, the City's employee who drove one of the tractors pulling the hay wagons, approached the group and asked who was "in charge."  Cialone identified herself as that person.  At Schier's request, Cialone signed what was referred to as a hold harmless agreement apparently on behalf of the Association.  The agreement provided, in relevant part, as follows:

-4-

In consideration for permission to participate in the Fall Hayrides at Camp Dearborn, the below-listed organization agrees to RELEASE AND FOREVER DISCHARGE the City of Dearborn, a municipal corporation, and its officers, departments, employees, and agents from any and all claims, liabilities, or lawsuits, including legal costs and attorney fees, resulting from the use of any City property or in any connection with the hayrides at Camp Dearborn.

The below-listed organization hereby agrees to defend, indemnify, and hold harmless the City of Dearborn, its officers, agents, departments and employees from and against any and all claims and causes of action of any kind arising out of or in connection with the organization's or any of the organization's participants' involvement in the hayrides at Camp Dearborn.

Knowing, understand, and fully appreciating all possible risks, the below-listed organization does hereby expressly, voluntarily, and willingly assume all risk of dangers associated with its participation or any of its participants' involvement in the hayrides at Camp Dearborn. These risks could result in damage to property, personal and/or bodily injury or death to the organization's individual participants.

The organization acknowledges that if it has minor participants, the minors' parents or guardians have granted specific permission for the minors to participate in the hayrides at Camp Dearborn.

The authorized signor acknowledges that he/she has advised the organization's participants of this agreement, the risks involved in the activity, and has the authority to enter into this agreement on behalf of the organization and the organization's participants.

Below these paragraphs, the agreement warned as follows: "THIS IS A RELEASE READ BEFORE SIGNING." In a section of the form designated for the organization's name, Cialone signed her name and then wrote the Association's address and phone number. In a section for the "[a]uthorized signor's name, address, and telephone number," Cialone signed her name and printed her name and home address.

After Cialone completed the agreement, the hayrides began. During the rides, one of the hay wagons tipped over, and several participants were injured as a result. According to plaintiffs, defendant Adam Forehand, the City's employee who drove the tractor that pulled the hay wagon that tipped over, was intoxicated and driving recklessly at the time of the accident. Consequently, plaintiffs brought a series of lawsuits against the City and Forehand. Plaintiffs' lawsuits alleged claims for negligence, gross negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. Plaintiffs also alleged that the City was vicariously liable for Forehand's negligence. In response to plaintiffs' lawsuit, the City moved for summary disposition on the ground that governmental immunity under the GTLA barred plaintiffs' claims. The City also filed a third-party complaint and counter-complaint against the Association and Cialone, claiming that the Association was bound by the hold harmless agreement discussed above. Alternatively, the City argued that, in the event the Association was

not bound by the agreement, the agreement was nevertheless binding against Cialone in her individual capacity. The City and the Association also filed cross-motions for summary disposition regarding enforcement of the hold harmless agreement. With respect to the City's motion for summary disposition on plaintiffs' claims, the trial court concluded that the tractor that pulled the hay wagon constituted a motor vehicle for purposes of the motor vehicle exception to governmental immunity. It therefore denied the City's motion for summary disposition on plaintiffs' claims. With respect to the City's and the Association's cross-motions for summary disposition regarding enforcement of the hold harmless agreement, the trial court concluded that the agreement was unenforceable as a matter of law due to a lack of consideration. It therefore denied the City's motion for summary disposition and granted the Association's motion for summary disposition. As indicated above, the City challenges both orders on appeal.

In Docket Nos. 330998, 331137, 331139, 331144, 331147, and 331149, the City argues that the trial court erred by concluding that the tractor that pulled the hay wagon was a motor vehicle for purposes of the motor vehicle exception to governmental immunity. We disagree.

The application of governmental immunity is a question of law subject to de novo review. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 433; 824 NW2d 318 (2012). A court may grant summary disposition pursuant MCR 2.116(C)(7) if the moving party is entitled to "immunity granted by law." *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). "When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). "If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact." *Id*. at 429. "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question of whether the claim is barred is an issue of law for the court." *Id*. "[I]f a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id*. This issue also involves the interpretation and application of a statute. "Issues concerning the proper interpretation of statutes are questions of law that we review de novo." *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). "It is the cardinal principle of statutory construction that courts must give effect to legislative intent. When reviewing a statute, courts must first examine the language of the statute. If the intent of the Legislature is clearly expressed by the language, no further construction is warranted." *Id*. at 562.

Generally, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). There are, however, exceptions to this general rule. Specifically, the trial court held that the motor vehicle exception set forth in MCL 691.1405 applied in this case. That statutory provision provides as follows:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is the owner, as defined in Act No 300 of the Public Acts of 1949 [the

Michigan Vehicle Code], as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948.

The term "motor vehicle" is not statutorily defined for purposes of this provision. When a statutory term is not statutorily defined, this Court turns to its dictionary definition to determine the term's plain and ordinary meaning. See *Weaver v Giffels*, 317 Mich App 671, ___; ___ NW2d ___ (2016) (Docket No. 327844); slip op at 4. With respect to the term "motor vehicle," this Court and our Supreme Court have done precisely that on several occasions.

For example, in *Stanton v City of Battle Creek*, 466 Mich 611, 613; 647 NW2d 508 (2002), the plaintiff truck driver delivered hardware to a location owned by the defendant city. A city employee used a forklift owned by the city to unload the truck. *Id*. The plaintiff was injured when the forklift's brakes failed, causing the forklift to roll forward and strike the plaintiff. *Id*. The defendant argued that the motor vehicle exception to governmental immunity did not apply because a forklift is not a motor vehicle within the meaning of the statute. *Id*. To begin its analysis, the Supreme Court first clarified that the definitional phrase in MCL 691.1405 "sends the reader to the Michigan Vehicle Code only for the definition of 'owner,' " "not 'motor vehicle,' and nothing in the statute demands a different interpretation." *Stanton*, 466 Mich at 616. Consequently, because the term "motor vehicle" was not statutorily defined, the Supreme Court turned to the term's dictionary definition. *Id*. at 617. It explained as follows:

> It is possible to find varying dictionary definitions of the term "motor vehicle." For example, the *Random House Webster's College Dictionary* (2001) defines a "motor vehicle" as "an automobile, truck, bus, *or similar* motor-driven conveyance," a definition that does not include a forklift. In our view, this definition appropriately reflects the commonly understood meaning of the term. *The American Heritage Dictionary* (2d College ed.), on the other hand, defines "motor vehicle" as "self-propelled, wheeled conveyance that does not run on rails," a definition, which would arguably include a forklift. Given these divergent definitions, we must choose one that most closely effectuates the Legislature's intent. Fortunately, our jurisprudence under the governmental tort liability act provides an answer regarding which definition should be selected. As previously noted, it is a basic principle of our state's jurisprudence that the immunity conferred upon governmental agencies and subdivisions is to be construed broadly and that the statutory exceptions are to be narrowly construed. *Nawrocki v Macomb Co Rd Comm,* 463 Mich 143, 158; 615 NW2d 702 (2000). Thus, this Court must apply a narrow definition to the undefined term "motor vehicle."

> The definition of a "motor vehicle" as "an automobile, truck, bus, or similar motor-driven conveyance" is the narrower of the two common dictionary definitions. Therefore, we apply it to the present case. A forklift—which is a piece of industrial construction *equipment*—is not similar to an automobile, truck, or bus. Thus, the motor vehicle exception should not be construed to remove the broad veil of governmental immunity for the negligent operation of a forklift. [*Stanton*, 466 Mich at 617-618 (emphasis in original).]

Then, in *Regan v Washtenaw County Rd Comm'rs (On Remand)*, 257 Mich App 39, 42-43; 667 NW2d 57 (2003), this Court reconsidered its decision in *Regan v Washtenaw County Bd of Comm'rs*, 249 Mich App 153, 155-156; 641 NW2d 285 (2002), on order from the Supreme Court, *Regan v Washtenaw County Rd Comm'rs*, 468 Mich 851; 658 NW2d 490 (2003), in light of the Supreme Court's decision in *Stanton* as well as another somewhat related matter, *Chandler v Muskegon County*, 467 Mich 315; 652 NW2d 224 (2002). *Regan* involved two cases, "the Regan case" and "the Zelanko case." In the Regan case, the plaintiff was driving a van when she collided with a city-owned and city-employee-operated boom tractor. *Regan (On Remand)*, 257 Mich App at 42. In the Zelanko case, the plaintiff's tractor-trailer rig was struck in the windshield by a piece of tire tread propelled by a mower operated by a city employee. *Id*. at 43. This Court, applying, in relevant part, the Supreme Court's interpretation and application of the term "motor vehicle" for purposes of the motor vehicle exception to governmental immunity in *Stanton*, concluded that the broom tractor and the tractor mower were both motor vehicles for purposes of MCL 691.1405:

> With respect to whether the broom tractor and tractor mower are "motor vehicles" for purposes of § 5, we find that both vehicles fit the definition enunciated in *Stanton*. Both vehicles are clearly motor-driven conveyances, in that they are motorized and carry or transport operators over the road, or alongside the road, while the operators are performing governmental duties. We respectfully disagree with the dissent's test that the "principal function" of the vehicle must be to transport or carry passengers or property in order to be considered a "motor vehicle" under § 5. Similar language is not found anywhere in the *Stanton* decision or the statute, and the dissent's use of a "principal function" test suggests that a vehicle must be used chiefly for the purpose of transporting persons or property and cannot be used, in any significant manner, for maintenance or other purposes to qualify under § 5. Limiting the definition in this manner would exclude numerous governmental vehicles that traverse Michigan roadways, including snowplows, utility and construction vehicles, and emergency vehicles that are used in a maintenance, improvement, or service capacity. This clearly was not the Legislature's intent in enacting MCL 691.1405. Surely, the Legislature did not intend to preclude liability for negligent actions associated with the operation of a governmental vehicle designed to be drive on or alongside roadways where the vehicle has maintenance and service capabilities. [*Id*. at 48-49.]

Finally, in *Wesche v Mecosta Co Rd Comm*, 267 Mich App 274, 275-276; 705 NW2d 136 (2005), this Court addressed whether a Gradall hydraulic excavator driven by a city employee constituted a motor vehicle for purposes of MCL 691.1405 when it struck a stopped vehicle at a traffic light. This Court, relying, in relevant part, on the *Stanton* and *Regan (On Remand)* decisions discussed above, held that the Gradall was a motor vehicle for purposes of the statute:

> Applying these decisions to the case at hand, we conclude that the Gradall is a motor vehicle for purposes of MCL 691.1405. The Gradall, a wheeled, motorized vehicle operated by a driver, generally resembles a truck and moves like a truck. The significant difference between it and a truck is that mounted on the back of the vehicle is a unit that operates a hydraulic excavation tool.

> Although defendant argues that the Gradall is not used primarily for transportation, none of the cases cited above requires the motor vehicle to be used primarily for transportation for MCL 691.1405 to apply. Moreover, when the Gradall is not being used for excavation, it can be driven along the roadways just like a truck and transports both its attached excavation unit and the driver. At the time of the accident in this case, the driver was returning the Gradall to defendant's garage from the project site. The Gradall was being drive on a public roadway when it struck the rear of [the plaintiff]'s vehicle. Under these circumstances, we conclude that the trial court did no err in ruling that the Gradall is a motor vehicle for purposes of MCL 691.1405. [*Wesche*, 267 Mich App at 278.]

In light of this binding caselaw, MCR 7.215(J)(1), it is our conclusion that the trial court correctly concluded that the tractor and hay wagon at issue in this case was a motor vehicle for purposes of the motor vehicle exception to governmental immunity. We are of the view that the tractor and hay wagon at issue in this case are more comparable to the broom tractor and the tractor mower at issue in *Regan* than the forklift at issue in *Stanton*. In fact, the record reflects that the tractor and hay wagon were being utilized to carry numerous passengers on a roadway used by campers and patrolled by law enforcement, which, unlike equipment such as a forklift, renders the tractor and hay wagon invariably connected to the roadway itself. See *Wesche*, 267 Mich App at 278, citing *Regan*, 257 Mich App at 48. While we agree with defendants that, generally, tractors can be used for purposes such as farming, binding caselaw is quite clear in that the "primary function" of a vehicle does not control the analysis at issue in this case. See *id*. at 277. Accordingly, we conclude that the trial court correctly concluded that the tractor and hay wagon at issue in this case was a motor vehicle for purposes of the motor vehicle exception to governmental immunity. Consequently, its decision to deny defendants' motion for summary disposition on that ground was correct.

On appeal, the City raises two other arguments with respect to the application of governmental immunity in this case. To the extent the City argues that the proprietary function exception to governmental immunity, MCL 691.1413, does not apply, we decline to address the merits of such an argument in light of our conclusion above. We do, however, choose to briefly address the City's arguments with respect to its vicarious liability for Forehand's conduct under the facts and circumstances of this case. Under the doctrine of vicarious liability, an employer is generally liable for the torts its employees commit so long as those torts are within the scope of their employment. *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 239; 859 NW2d 723 (2014). The trial court concluded that the City was not entitled to summary disposition on plaintiffs' vicarious liability claims because the motor vehicle exception applied. The trial court additionally stated, however, that gross negligence "defeats governmental immunity." The City does not challenge the trial court's initial statement, i.e., that it can be held vicariously liable for Forehand's negligence if the motor vehicle exception to governmental immunity applies. However, the City does take issue with the trial court's suggestion that any gross negligence by Forehand would, by itself, prohibit it from asserting governmental immunity. We agree with the City in that regard.

The relevant statutory provision is MCL 691.1407, which provides, in relevant part, as follows:

(1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. . . .

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

This statutory language is unambiguous. MCL 691.1407(1) provides immunity to a governmental agency without regard to an employee's gross negligence. MCL 691.1407(2) provides immunity for governmental employees, but MCL 691.1407(2)(c) provides an exception to that immunity where the employee's conduct constitutes gross negligence. Although subsection (2)(c) establishes an exception to the grant of immunity to an officer or employee of a governmental agency, it does not provide that a governmental agency otherwise entitled to immunity can be vicariously liable for the officer's or employee's gross negligence. Consequently, if governmental immunity does not apply "as otherwise provided in this act," e.g., pursuant to the motor vehicle exception, the City would not be vicariously liable for Forehand's negligence, regardless of whether it rises to the level of gross negligence. See, e.g., *Hobrla v Glass*, 143 Mich App 616, 624; 372 NW2d 630 (1985) (providing that, under MCL 691.1407(1), "[t]he department's immunity extends to allegations of vicarious liability, since the individual defendants, even if they acted negligently, were also engaged at the time the tort was committed [in] the exercise or discharge of a governmental function").

Contrary to plaintiffs' argument on appeal, MCL 691.1408 does not require imposition of vicarious liability against a governmental agency for an employee's gross negligence. MCL 691.1408 provides the following in that regard:

(1) Whenever a claim is made or a civil action is commenced against an officer, employee, or volunteer of a governmental agency for injuries to persons or property caused by negligence of the officer, employee, or volunteer while in the course of employment with or actions on behalf of the governmental agency and while acting within the scope of his or her authority, the governmental agency *may* pay for, engage, or furnish the services of an attorney to advise the officer, employee, or volunteer as to the claim and to appear for and represent the officer, employee, or volunteer in the action. The governmental agency *may* compromise,

settle, and pay the claim before or after the commencement of a civil action. Whenever a judgment for damages is awarded against an officer, employee, or volunteer of a governmental agency as a result of a civil action for personal injuries or property damage caused by the officer, employee, or volunteer while in the course of employment and while acting within the scope of his or her authority, the governmental agency *may* indemnify the officer, employee, or volunteer or pay, settle, or compromise the judgment.

(2) When a criminal action is commenced against an officer or employee of a governmental agency based upon the conduct of the officer or employee in the course of employment, if the employee or officer had a reasonable basis for believing that he or she was acting within the scope of his or her authority at the time of the alleged conduct, the governmental agency *may* pay for, engage, or furnish the services of an attorney to advise the officer or employee as to the action, and to appear for and represent the officer or employee in the action. An officer or employee who has incurred legal expenses after December 31, 1975 for conduct prescribed in this subsection *may* obtain reimbursement for those expenses under this subsection.

(3) This section does not impose liability on a governmental agency. [Emphasis added.]

The use of the word "may" in subsections (1) and (2) indicates that a governmental employer's decision to indemnify an employee for liability or to cover the cost of the employee's legal defense is a discretionary, not mandatory, decision. See *Detroit Edison Co v Stenman*, 311 Mich App 367, 384 n 8; 875 NW2d 767 (2015). Moreover, 691.1408(3) makes clear that this section "does not impose liability on a governmental agency." Therefore, 691.1408 does not provide a basis for imposing vicarious liability on a governmental agency for its employee's gross negligence.

In Docket No. 331630, the City argues that the trial court erred by concluding that the hold harmless agreement was unenforceable as a matter of law. We agree with the trial court's decision in this regard.

The parties filed cross-motions for summary disposition pursuant to MCR 2.116(C)(10) with respect to this issue. The trial court granted the Association's motion and denied the City's motion pursuant to that subrule, which provides for summary disposition when "there is no genuine issue as to any material fact and the moving party is entitled to judgment . . . as a matter of law." In deciding a motion for summary disposition pursuant to MCR 2.116(C)(10) and reviewing that decision on appeal, courts must consider any evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999). A genuine issue of material fact exists when the record leaves open "an issue upon which reasonable minds might differ." *Debano–Griffin v Lake Co,* 493 Mich 167, 175; 828 NW2d 634 (2013). A trial court's decision to grant a party's motion for summary disposition is reviewed de novo. *Maiden*, 461 Mich at 118. This Court also reviews a trial court's interpretation and application of a contract de novo. *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d

458 (2002). "The goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself." *St Clair Med, PC v Borgiel*, 270 Mich App 260, 264; 715 NW2d 914 (2006).

At issue in this case is a hold harmless agreement. A hold harmless agreement is an indemnity contract, which is, in essence, a release of liability. *Hecht v National Heritage Academies, Inc*, 499 Mich 586, 627 n 88; 886 NW2d 135 (2016). "An indemnity contract creates a direct, primary liability between the indemnitor and the indemnitee that is original and independent of any other obligation." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 173; 848 NW2d 95 (2014). "Before a contract can be completed, there must be an offer and acceptance." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006) (citation omitted). "[A] contract requires mutual assent or a meeting of the minds on all the essential terms." *Id*. Legal consideration also is required for a binding contract. *Yerkovich v AAA*, 461 Mich 732, 740-741; 610 NW2d 542, 546 (2000). Consideration is "[s]ome right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered or undertaken by the other." *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 615 NW2d 241 (2000), quoting Black's Law Dictionary (6th ed), p 306. Consideration exists when there is "a benefit on one side, or a detriment suffered, or service done on the other." *Id*. at 242. In this case, the trial court determined that there was no new consideration for the hold harmless agreement because the City was already contractually obligated to provide the hay rides at the time the hold harmless agreement was signed. That is, the trial court determined that the City had a preexisting duty to provide the hayrides. "Under the preexisting duty rule, it is well settled that doing what one is legally bound to do is not consideration for a new promise." *Yerkovich*, 461 Mich at 740-741.

In this case, the hold harmless agreement purported to "release and forever discharge" the City from "any and all claims . . . resulting from the use of any City property or in any connection with the hayrides at Camp Dearborn." It additionally required the Association "to defend, indemnify, and hold harmless" the City and its employees "from and against any and all claims and causes of action of any kind arising out of or in connection with the organization's or any of the organization's participants' involvement in the hayrides at Camp Dearborn." The City relies, in part, on this Court's decision in *Rowady v K Mart Corp*, 170 Mich App 54, 59; 428 NW2d 22 (1988), where a panel of this Court, relying on 1 Restatement Contracts, 2d, § 80, stated as follows with respect to the interplay between releases and consideration in circumstances such as this:

> Where there is no specific recitation of separate consideration for the release, but it is part of a larger contract involving multiple promises, the basic rule of contract law is that whatever consideration is paid for all the promises is consideration for each one:
>
> > (1) There is consideration for a set of promises if what is bargained for and given in exchange would have been consideration for each promise in the set if exchanged for that promise alone.

> (2) The fact that part of what is bargained for would not have been consideration if that part alone had been bargained for does not prevent the whole from being consideration.
>
> Comment:
>
> a. *One consideration for a number of promises.* Since consideration is not required to be adequate in value (see § 79), two or more promises may be binding even though made for the price of one. A single performance or return promise may thus furnish consideration for any number of promises.

Stated simply, "all consideration paid by [a] defendant in exchange for [a] plaintiff's multiple promises must be viewed as consideration as to each promise . . . ." *Id.*

While we agree with the *Rowady* panel's statement in this regard, we cannot agree that it is dispositive in this matter. The record includes multiple "RENTAL SALES RECEIPT[s]," and each of those receipts repeatedly refers to a flyer for the applicable rules and regulations. Specifically, the receipts instruct readers to "SEE FLYER FOR DETAIL OF RULES & REGULATION" or to "SEE FLYER FOR DETAILED RULES AND REGULATIONS." They do not, however, mention the necessity of a hold harmless agreement. Similarly, the necessity of a hold harmless agreement is not mentioned in the flyer either. While the flyer, which is entitled "Fall Hayrides at Camp Dearborn," does set forth various specific rules regarding reservations, the maximum capacity for hayrides, opening and closing hours, rental fees and damage deposits, the facility's hours of operation, rules providing "**<u>FOR YOUR SAFETY DURING HAYRIDES</u>**," and cancellations, it makes no mention that additional agreements, including, for example, a hold harmless agreement, were contemplated as part of the parties' agreement. Between the receipts and the flyer, it is quite apparent that the parties' contract, which included an agreement to provide hayrides, extensively covered all the essential terms of the agreement. *Kloian*, 273 Mich App at 452. Stated differently, nothing in the record supports a conclusion that the hold harmless agreement was "part of a larger contract involving multiple promises[.]" *Rowady*, 170 Mich App at 59. As the trial court explained,

> Here, the only contract between the City and the Association was the contract for the hayride and chalet. The contract was finalized as of October 22, 2013, the date that the Association paid in full. At that point, there was an offer by Camp Dearborn, acceptance by the Association, and consideration, i.e., money paid by the Association in return for Camp Dearborn's obligation to provide the hayride and chalet. The Hold Harmless Agreement was not part of that contract. It was a separate agreement for which new consideration was required. There was no consideration. Camp Dearborn was already obligated to provide the hayride and chalet. The City did not incur any additional detriment, loss, forbearance, or responsibility under the Agreement. The Agreement fails for lack of consideration.

We discern no error with the trial court's conclusion in this regard.

Affirmed. Plaintiffs, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens